### No. 26624

**Denver Welfare Rights Organization and Capitol Hill Tenants Union v. Public Utilities Commission of the State of Colorado v. Public Service Company of Colorado; Poudre Valley Electric Association; and Colorado Rural Electric Association**

(547 P.2d 239)

Decided March 8, 1976.                    Rehearing denied March 29, 1976.

---

[1] Now section 18-1-603, C.R.S. 1973.

Legal Aid Society of Metropolitan Denver, Inc., Kenneth R. Fish, John B. Kusic, Jon S. Nicholls, George A. Hacker, for plaintiffs-appellants.

John P. Moore, Attorney General, John E. Bush, Deputy, James K. Tarpey, Assistant, Eugene C. Cavaliere, Assistant for defendant-appellee.

Lee, Bryans, Kelly & Stansfield, Donald D. Cawelti, for intervenor-appellee Public Service Company of Colorado.

Cross, Christensen & Price, Warren H. Price, for intervenor-appellee Poudre Valley Electric Association.

John J. Conway, for intervenor-appellee Colorado Rural Electric Association.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

The plaintiffs (appellants), Denver Welfare Rights Organization and Capitol Hill Tenants Union, instituted an action in the district court for the City and County of Denver seeking judicial review of a decision of the Public Utilities Commission of the State of Colorado, defendant (appellee), which upheld the validity of a Commission rule. The district court granted Poudre Valley Rural Electric Association, Colorado Rural Electric Association, and Public Service Company of Colorado permission to intervene. On May 20, 1974, the district court affirmed the Commission decision, and plaintiffs appealed. The pertinent issues on appeal relate to the validity of Rule 13, adopted by the Public Utilities Commission on September 7, 1973, pursuant to the Commission's rule-making powers. We affirm.

On March 30, 1973, the Public Utilities Commission initiated rule-making proceedings by giving notice of a hearing and proposed rules relating to electric, gas, water, and telephone utilities.[1] The proceedings involved proposed rule changes in Rule 10 (meter readings), Rule 11 (deposit requirements), and Rule 13 (discontinuance of service).[2] Intervention was sought at the hearing level by numerous utilities, cities, and individuals. The plaintiffs, among others, intervened in all four pro-

---

[1] PUC Decisions Nos. 82693 [R:5320:00360-371]; 82694 [R:5321:00164-173]; 82695 [R:5322:00141-149]; and 82696 [R:5323:00241-250], respectively.
[2] The proceedings were consolidated for hearing purposes, inasmuch as the proposed rules affected each utility similarly.

ceedings. After two days of hearings, the Commission rendered its decision on September 7, 1973, in which the proposed rules for the various utilities were adopted with some modifications.[3]

Plaintiffs brought this action pursuant to C.R.S. 1963, 115-6-15[4] in the district court for purposes of judicial review of final agency action. They challenged the constitutionality of the Commission's Decision No. 83551 only as it pertains to Rule 13 (discontinuance of service).[5] On May 10, 1974, the action was tried to the court, and on May 20, 1974, the district court entered its decision affirming the Commission.

The appellant, Denver Welfare Rights Organization, urges this court to declare that the provisions of Rule 13(c) and (d) violate the due process clauses of both the federal and state constitutions in that the rule fails to provide utility customers with an unconditional opportunity to have an evidentiary hearing prior to the termination of utility service.

## I.
### The Interest Involved

The plaintiff's argument centers on the Due Process Clause of the Fourteenth Amendment, which provides, "nor shall any State deprive any person of life, liberty or property, without due process of law." The threshold question which must be addressed prior to any consideration of the requirements of due process is whether the requirements are even applicable to the issues in this case. Therefore, we must examine the "nature of the interest at stake," in order to determine whether it constitutes a property interest subject to the protections of procedural due process. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *see also Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

In this case, the property interest claimed by the appellant is the right to the uninterrupted continuance of utility services. To date, the United States Supreme Court has declined to consider the question of whether continued utility service constitutes a property interest under the Fourteenth Amendment. *Jackson v. Metropolitan Edison*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). Something more than a "subjective 'expectancy' " must be at stake in order to achieve the protections of procedural due process. *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

---

[3] PUC Decision No. 83551 [R:5320:00031-86]. Plaintiffs-Appellants' Application for Reconsideration, Reargument, or Rehearing [R:5320:00007-11], was denied in PUC Decision No. 83746 [R:5320:00001-6] dated September 26, 1973.

[4] Now section 40-6-115, C.R.S. 1973.

[5] Plaintiffs-Appellants contest Rule 13 only in relation to gas, electric and telephone utilities. Since none of the plaintiffs-appellants receive water services from any utility under the jurisdiction of the Commission, Rule 13 is not challenged as it applies to water utilities.

■ However, the concept of property under the Due Process Clause extends "well beyond actual ownership of real estate, chattels, or money . . . ." *Board of Regents v. Roth, supra.* In fact, a person's interest in a "benefit" has been characterized by the Supreme Court as a property interest, *Board of Regents v. Roth, supra; Perry v. Sindermann, supra,* provided the person has a "legitimate claim of entitlement to it." *Board of Regents v. Roth, supra.* The Supreme Court has declared that:

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. . . . He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined.

. . . .

"Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth, supra.*

The customers' interests in receiving utility service are at least as significant as other "entitlements" the United States Supreme Court has recognized. *See e.g., Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (replevin); *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (driver's license); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (welfare benefits); and *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (garnishment). In *Bell v. Burson, supra,* the Supreme Court characterized an individual's driver's license as an "important interest," and concluded that due process requires States to provide a hearing prior to the suspension of this benefit. The customer's desire for continued utility service, particularly when such service provides warmth and fuel for a home, ranks as an equally "important interest," in our view. *Stanford v. Gas Service Co.,* 346 F.Supp. 717 (D. Kan. 1972); *See generally, Salisbury v. Southern New England Telephone Co.,* 365 F.Supp. 1023 (D. Conn. 1973); *Lamb v. Hamblin,* 57 F.R.D. 58 (D. Minn. 1972).

■ We, therefore, conclude that the uninterrupted continuation of utility service is a protected interest within the purview of the Due Process Clause of the Fourteenth Amendment and Article II, Section 25 of the Colorado Constitution. *See also Ihrke v. Northern States Power Co.,* 459 F.2d 566 (8th Cir. 1972), *vacated as moot,* 409 U.S. 815, 93 S.Ct. 66, 34 L.Ed.2d 72 (1972); *Bronson v. Consolidated Edison Co.,* 350 F.Supp. 443 (S.D.N.Y. 1972); *Hattell v. Public Service Co.,* 350 F.Supp. 240 (D. Colo. 1972). Having resolved the threshold question, we

must determine whether the action of a utility company in terminating service constitutes state action so as to bring it within the purview of the Fourteenth Amendment.

## II.
### State Action

The Due Process Clause of the Fourteenth Amendment relates only to actions taken by States, and not to private conduct, "however discriminatory and wrongful." *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed.2d 1161 (1948); *see also Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Evans v. Abney*, 396 U.S. 435, 90 S.Ct. 628, 24 L.Ed.2d 634 (1970); *The Civil Rights Cases*, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883). In determining whether the action complained of constitutes "state action," we must examine whether a sufficiently close nexus exists "between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co., supra.*

Initially, we find it obvious that the Public Utilities Commission of the State of Colorado controls nearly every phase of operation of the regulated utilities in the state. A brief persual of Title 40 of the Colorado Revised Statutes reveals that the Public Utilities Commission exercises extensive regulatory powers which affect the daily operation of all public utilities in the state. *See generally, Public Service Co. v. Public Utilities Comm'n.*, 142 Colo. 135, 350 P.2d 543, *cert. denied*, 364 U.S. 820, 81 S.Ct. 53, 5 L.Ed.2d 50 (1960).

Included within the commanding authority of the Public Utilities Commission is the power to promulgate rules and regulations necessary for the proper enforcement and administration of the Public Utilities Act. Section 40-2-108, C.R.S. 1973. Among other broad powers are the regulations of rates and correction of abuses; section 40-3-102, C.R.S. 1973; *Mountain States Telephone and Telegraph Co. v. Public Utilities Comm'n.*, 176 Colo. 457, 491 P.2d 582 (1971); *Consolidated Freightways Corps. v. Public Utilities Comm'n.*, 158 Colo. 239, 406 P.2d 83 (1965); the control over the quality of service delivered by utilities; *see generally* sections 40-4-101 to 40-4-112, C.R.S. 1973; the power to conduct hearings and investigations; *see generally* sections 40-6-101 to 40-6-121, C.R.S. 1973; and the right to initiate enforcement and penalty provisions of the Public Utilities Act, *see* sections 40-7-101 to 40-7-111, C.R.S. 1973.

The Colorado legislature has bestowed broad powers upon the Public Utilities Commission. Public utilities, even though privately-financed and owned, operating pursuant to the regulation of the Commission, are granted existence by virtue of State law, section 40-5-102, C.R.S. 1973, and thereafter carry on business under color of State law. *See*

*Salisbury v. Southern New England Telephone Co., supra; Stanford v. Gas Service Co., supra.*

We recognize that "state action" is neither readily apparent nor easily discoverable in various factual settings, *compare Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), *with Moose Lodge No. 107 v. Irvis, supra,* but we believe the United States Supreme Court has afforded adequate guidance for a proper resolution of the issue in this particular factual context.

The Supreme Court confronted the "state action" question in *Jackson v. Metropolitan Edison Co., supra,* where a utility customer challenged the termination of her electrical service on the basis that the state-regulated utility had failed to provide prior notice or a hearing on the termination. Metropolitan Edison Co., the utility, had previously filed a general tariff with the Public Utilities Commission of Pennsylvania and therein provided for the right of the utility to terminate service for non-payment. Because of this termination provision, the utility customer argued that a sufficiently close nexus existed between the utility and the State to warrant a finding of "state action." The Supreme Court disagreed after concluding that "the sole connection of the Commission with [the] regulation was Metropolitan's simple notice filing with the Commission and the lack of any Commission action to prohibit it . . . ." *Jackson v. Metropolitan Edison Co., supra.* Of critical significance in the Supreme Court's decision was the fact that the termination provision complained of was never the subject of a hearing or other investigation by the Public Utilities Commission of Pennsylvania. This fact led the Supreme Court to observe that the Commission had not "put its own weight on the side of the proposed practice by ordering it . . . ," and thus, the Court concluded that the mere approval by the Public Utilities Commission of the tariff did not amount to "state action." *Jackson v. Metropolitan Edison Co., supra.*

A striking contrast is presented in the earlier Supreme Court case of *Public Utilities Comm'n. v. Pollak,* 343 U.S. 451, 72 S.Ct. 813, 96 L.Ed. 1068 (1952), where the District of Columbia Public Utilities Commission decided on its own motion that the installation of a piped music system on public buses did not violate the constitutional rights of the utility customers. The Public Utilities Commission in that case initiated and conducted an investigation of the effects of the piped music and concluded, after a full hearing, that the activity was not "inconsistent with public convenience, comfort, and safety . . . ." *Public Utilities Comm'n. v. Pollak, supra.* In distinguishing the *Pollak* case, the Supreme Court, in *Jackson v. Metropolitan Edison Co.,* stated that the Public Utilities Commission of the District of Columbia had placed its "imprimatur" on the contested provision by conducting a hearing and investigation prior to their approval of the regulation. This elevated the action of the utility to

"state action" under the Fourteenth Amendment. *Jackson v. Metropolitan Edison Co., supra; Public Utilities Comm'n. v. Pollak, supra.*

■ The present case more closely resembles the *Pollak* case than the *Jackson* case, inasmuch as the Public Utilities Commission of the State of Colorado approved Rule 13. After initiating rule-making proceedings and conducting two full days of hearings, the Public Utilities Commission expressly adopted the procedures outlined in Rule 13, thereby throwing its weight on the side of the rule. This, in our view, clearly constitutes "state action" within the bounds of the Supreme Court's definition of that phrase and, therefore, lies within the purview of the Fourteenth Amendment. *Jackson v. Metropolitan Edison Co., supra; Public Utilities Comm'n v. Pollak, supra; accord, Burton v. Wilmington Parking Authority, supra; Reitman v. Mulkey,* 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967); *Evans v. Newton,* 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed2d 373 (1966); *Shelley v. Kraemer, supra; Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946); *Palmer v. Columbia Gas of Ohio, Inc.* 342 F.Supp. 241 (N.D. Ohio 1972), *aff'd.* 479 F.2d 153 (6th Cir. 1973); *Ihrke v. Northern States Power Co., supra; Bronson v. Consolidated Edison Co.,* 350 F.Supp. 443 (S.D.N.Y. 1972).

### III.
### Procedural Due Process

The appellants contend that the safeguards afforded by Rule 13 in regard to the termination of utility service are inadequate in view of the Due Process Clause of the Fourteenth Amendment. The essential procedural safeguards of Rule 13 may be summarized as follows (see Rule 13 in Appendix to opinion): No utility shall discontinue service to a customer for violation of any rule of the utility and/or for non-payment of any amount due for utility service except upon written notice of at least seven days. The rule requires that the notice shall inform the customer of the reason for the termination[6] and the manner in which the utility may be contacted for the purpose of resolving the dispute. The customer is to be further advised that he is entitled to make an informal complaint to the Commission staff by letter, telephone, or in person, and/or that the customer may request in writing a hearing before the Commission.

The Commission is vested with discretion under the rule as to whether utility service should continue pending a hearing. Ordinarily, service will not be continued unless the customer posts a deposit with the

---

[6] Rule 13(a) provides that notice is not necessary "where a by-pass is discovered on a customer's service meter, or short circuit on a customer's premises, or in the case of a customer utilizing service in such a manner as to make it dangerous for occupants of the premises, thus making an immediate discontinuance of service to the premises imperative."

utility equal to the amount in dispute or previously made an informal complaint to the Commission staff, and staff investigation of the complaint indicates that the customer will probably be successful in pursuing the claim. In addition, the rule provides that the Commission shall set a hearing on the proposed termination of service at the earliest practicable time in the event a hearing is requested by the utility customer.

■ The Supreme Court has held that procedural due process is a flexible concept and that minimum requirements may vary depending upon the case. *Board of Regents v. Roth, supra; Bell v. Burson, supra; Goldberg v. Kelly, supra.* In the recent case of *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), the Supreme Court concluded:

"The requirements of due process of law 'are not technical, nor is any particular form of procedure necessary.' Inland Empire Council v. Millis, 325 U.S. 697 (1945). Due process of law guarantees 'no particular form of procedure; it protects substantial rights.' NLRB v. Mackay Co., 304 U.S. 333 (1938). 'The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.' Cafeteria Workers v. McElroy, 367 U.S. 886 (1961); Stanley v. Illinois, 405 U.S. 645 (1972)."

■ To establish the minimum requirements of due process in a case, the Supreme Court has proposed the use of a balancing test in which the interests of the opposing parties are evaluated, and the procedural requirements are structured so as not to inordinately favor the interests of one party. *See generally, Mitchell v. W. T. Grant, supra; see also Board of Regents v. Roth, supra.* The courts have taken notice of the various personal interests of utility customers who face termination of utility services. *See e.g., Bronson v. Consolidated Edison Co., supra; Palmer v. Columbia Gas Co., supra; Stanford v. Gas Service Co.*, 346 F. Supp. 717 (D. Kan. 1972). These decisions have recognized that the customers' interest relates to certain basic necessities — electricity, gas, water, etc Consideration of such necessities must not blind us to the basic fact that no one is entitled to free utility service. *See Morgan v. Kennedy*, 331 F.Supp. 861 (D. Neb. 1971). The interest of the utility customer in the continuation of utility services is limited to his ability and willingness to assume the financial responsibility for that service. *See Lamb v. Hamblin, supra.* Moreover, no one is entitled to abuse his right to receive utility services. To the extent such right is abused, the customer's entitlement to service is diminished. Therefore, the right of a utility customer to receive service is not, in our opinion, an absolute right, but is a qualified right. The right is dependent upon payment for the service and the product provided. The continuation of service during a dispute is dependent upon either the posting of what is, in effect, an indemnity bond or the assertion of a well-founded claim that would justify the customer's refusal to pay

for the service which was rendered.

To complete the balance, the interests of the utility company should be considered. Initially, we observe that the utility company retains possession of the product representing the object of the customer's claim of entitlement. The utility company releases possession of that product — whether it be gas, electricity, or water, etc. — with the expectation that the customer will pay for the product which the utility provided. Should the customer not pay, the utility cannot repossess the service and stands in a different position than most commercial creditors. *See e.g., Fuentes v. Shevin, supra.* Moreover, this court cannot ignore the fact that utility companies must operate on an economically sound and stable basis and that "[e]ven 'rudimentary' due process hearings would be highly expensive if resorted to in every termination dispute." Note, *Fourteenth Amendment Due Process in Terminations of Utility Services for Nonpayment,* 86 Harv. L. Rev. 1477 (1973).

The hearing which the plaintiffs seek would not only be expensive, but would result in delay. An automatic pretermination hearing would "provide an incentive to dispute arrearages," *Lucas v. Wisconsin Electric Power Co.,* 466 F.2d 638 (7th Cir. 1972), hampering the efficiency of the dispute resolution mechanism. Ironically, this would impinge upon the rights of other customers seeking settlement of their accounts at as early a time as practicable. Moreover, should the utility customer's claim be invalid, "delaying the discontinuance of service would, in effect, compel the [utility company] to extend credit to non-paying customers. [footnote omitted]." *Lucas v. Wisconsin Electric Power Company, supra.*

In our view, the property interest here in issue is very dissimilar from the property interests at stake in cases like *Fuentes v. Shevin, supra; Snaidach v. Family Finance Corp., supra; Mitchell v. W. T. Grant Co., supra*; and *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1974). The dissimilarity is so striking as to render analogies to those cases all but meaningless. Only the most general propositions of law can be fairly deduced from those cases when applied to the instant case.

Minimal due process requires "notice and an opportunity to be heard . . . 'granted at a meaningful time and in a meaningful manner' " before a person may be finally deprived of his constitutionally protected interests. *Fuentes v. Shevin, supra.* As the Supreme Court stated in *Mitchell v. W. T. Grant Co. supra,* however, a hearing is only required before one is "*finally* deprived of his property . . . ." This buttresses our view that where the rights of the individual are otherwise protected, the "full and immediate post-termination hearing," *Mitchell v. W. T. Grant Co., supra*, protects both the consumer and the utility company.

■ The procedural safeguards effected by Rule 13 are adequate to protect the interests involved and are consistent with the provisions of the Due Process Clause of the Fourteenth Amendment and Article II, Section 25 of the Colorado Constitution.

■ The notice provisions of Rule 13 are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The rule assures that the customer will be informed of both the utility company's reasons for termination and the customer's right to seek further assistance informally and/or by way of a formal hearing if he wishes to challenge the termination. The informal dispute resolution mechanism, implied by the rule, is to insure efficiency in handling customer complaints. Finally, provision is made for a full adversary hearing in the event the informal procedures do not satisfy the utility customer. In light of the fact that the utility customer's right to service is not an absolute right, we are not disposed to require that the Commission grant a formal hearing prior to termination of service in each instance.

■ Rule 13 provides that the Commission is entitled to exercise its discretion in deciding whether to continue utility service between the time of the notice and the time at which all rights are finally adjudicated. We infer from Rule 13 that the Commission is to exercise an informed discretion — meaning that some investigation of the dispute, even if informal, occurs prior to the time service is terminated. Investigation serves as a deterrent to arbitrary and capricious actions on the part of the utility company. This procedure, in our opinion, sufficiently protects the rights guaranteed a utility customer in the continuance of utility service and satisfies the minimal protections afforded by the Due Process Clause of the Fourteenth Amendment and Article II, Section 25 of the Colorado Constitution.

Our resolution of these issues makes consideration of any further issues in this appeal unnecessary. We affirm P.U.C. Decision No. 83551, P.U.C. Decision No. 83746, and the judgment of the district court of the City and County of Denver.

MR. CHIEF JUSTICE PRINGLE dissents.

## APPENDIX

Rule 13 provides as follows:

"Electric Rule 13 (a):

"No utility shall discontinue the service of any customer for violation of any rule of such utility AND/OR FOR NON-PAYMENT OF ANY SUM DUE FOR UTILITY SERVICE except upon written notice of at

least SEVEN days, advising the customer in what particular such rule has been violated for which service will be discontinued, AND/OR THE AMOUNT DUE AND THE DATE BY WHICH THE SAME SHALL BE PAID. This rule shall not apply where a by-pass is discovered on a customer's service meter, or short circuit on a customer's premises, or in the case of a customer utilizing service in such a manner as to make it dangerous for occupants of the premises, thus making an immediate discontinuance of service to the premises imperative.

"Electric Rule 13 (b):

"Delinquency in payment for service rendered to a previous occupant of the premises to be served and unpaid charges for services or facilities not ordered by the present or prospective customer shall not constitute a sufficient cause for refusal of service to a present or prospective customer; provided, however, the utility may decline to furnish service at the same premises for the use of a delinquent customer by subterfuge in any manner. Subterfuge includes, but is not restricted to an application for service at a given location in the name of another party by an applicant whose account is delinquent and who continues to reside at the premises. SERVICE SHALL NOT BE DISCONTINUED OR REFUSED FOR FAILURE TO PAY ANY INDEBTEDNESS EXCEPT AS INCURRED FOR UTILITY SERVICE RENDERED BY THE UTILITY IN THE STATE OF COLORADO.

"Electric Rule 13 (c):

"IN THE EVENT A UTILITY GIVES NOTICE OF DISCONTINUANCE OF SERVICE IN ACCORDANCE WITH SECTION (a) OF THIS RULE, SAID NOTICE SHALL ADVISE THE CUSTOMER HOW TO CONTACT THE UTILITY TO RESOLVE ANY DISPUTE, WITH RESPECT TO AMOUNT OR DATE DUE, AND/OR WITH RESPECT TO VIOLATION OF ANY RULE, AND, IN ADDITION, SAID NOTICE SHALL ADVISE THE CUSTOMER OF HIS RIGHTS UNDER THIS RULE AS FOLLOWS:

"(1) THE RIGHT TO MAKE AN INFORMAL COMPLAINT TO THE COMMISSION STAFF BY LETTER, TELEPHONE OR IN PERSON; AND/OR (2) THE RIGHT TO REQUEST, IN WRITING, A HEARING BEFORE THE COMMISSION. THE COMMISSION MAY ORDER THE UTILITY NOT TO TERMINATE SERVICE PENDING A HEARING AT THE DISCRETION OF THE COMMISSION. ORDINARILY, SUCH AN ORDER NOT TO TERMINATE SERVICE WILL BE ISSUED ONLY IF (A) THE CUSTOMER HAS POSTED A DEPOSIT WITH THE UTILITY EQUAL TO THE AMOUNT IN DISPUTE; OR (B) THE CUSTOMER HAS PREVIOUSLY MADE AN INFORMAL COMPLAINT TO THE COMMISSION STAFF AND STAFF INVESTIGATION OF SUCH COMPLAINT INDICATES PROBABLE SUCCESS OF THE

CUSTOMER.

"Electric Rule 13 (d):

"IN THE EVENT A CUSTOMER REQUESTS A HEARING ON THE PROPOSED TERMINATION OF SERVICE BY THE UTILITY, THE COMMISSION SHALL SET THE MATTER FOR HEARING AT THE EARLIEST PRACTICABLE TIME, WHICH HEARING SHALL BE CONDUCTED IN ACCORDANCE WITH THE RULES OF PRACTICE AND PROCEDURE OF THE COMMISSION. UPON MOTION BY THE UTILITY, THE COMMISSION MAY ORDER THE APPLICANT FOR A HEARING TO POST AN ADDITIONAL DEPOSIT WITH THE UTILITY IN SUCH AMOUNT AS THE COMMISSION DEEMS REASONABLE UNDER THE CIRCUMSTANCES.

"Electric Rule 13 (e):

"SERVICE SHALL NOT BE DISCONTINUED FOR NONPAYMENT OF ANY UTILITY BILL MORE THAN THIRTY (30) DAYS OVERDUE IF CURRENT BILLS ARE PAID WHEN DUE AND ALL PAST DUE AMOUNTS ARE BEING AMORTIZED BY REASONABLE INSTALLMENT PAYMENTS. CURRENT BILL MEANS THAT PORTION OF THE BILL WHICH IS NOT THIRTY (30) DAYS PAST DUE."