Douglas ANDERSON, Patricia Clisham, Harvey Cochran, Thomas F. Dixon, James Dotson, Edwin L. Felter, Jr., William Fritzel, H. Conway Gandy, Michael R. Homyak, Thomas E. Korson, Paul Kubitschek, Paul Leibowitz, Harriett Moskovit, Thomas R. Moeller, Michael Mullins, Judith F. Shulman, David A. Sorenson, Arthur G. Staliwe, Don P. Stimmel, John Stuelpnagel, and Robert E. Temmer, Plaintiffs–Appellants,

v.

COLORADO STATE DEPARTMENT OF PERSONNEL, and Gail S. Schoettler, Executive Director; and The Colorado State Personnel Board, Defendants–Appellees.

and

Montie BARRINGER, Patricia Clisham, Harvey Cochran, Thomas F. Dixon, James Dotson, Edwin L. Felter, Jr., William Fritzel, H. Conway Gandy, Michael R. Homyak, Thomas E. Korson, Paul Kubitschek, Paul Leibowitz, Harriett Moskovit, Thomas R. Moeller, Michael Mullins, Judith F. Shulman, Marshall Snider, David Sorenson, Arthur G. Staliwe, Don P. Stimmel, John Stuelpnagel, and Robert E. Temmer, Plaintiffs–Appellants,

v.

COLORADO STATE DEPARTMENT OF PERSONNEL, and Gail S. Schoettler, Executive Director; and the Colorado State Personnel Board, Defendants–Appellees.

No. 86SA61.

Supreme Court of Colorado, En Banc.

May 16, 1988.

Rehearing Denied June 13, 1988.

Michael R. Homyak, Arthur G. Staliwe, Denver, for plaintiffs-appellants.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Kathryn J. Winters, Mary Ann Whiteside, Asst. Attys. Gen., Denver, for defendants-appellees.

KIRSHBAUM, Justice.

The appellants, hearing examiners employed by the State of Colorado, appeal a district court order affirming two decisions of the Colorado State Personnel Board (the Board) rejecting challenges to the validity of two annual salary and employee benefit surveys conducted by the State Personnel Director (the Director).[1] We affirm.

I

Article XII, section 14, of the Colorado Constitution established the Board and the Colorado State Department of Personnel (the Department) and designated the Director as the head of the Department and the administrator of the state personnel system. Pursuant to this constitutional provision, the State Personnel System Act (the Act), currently codified at sections 24–50–101 to –402, 10 C.R.S. (1982 & 1987 Supp.), was enacted, establishing a state policy to compensate state employees with salaries and benefits comparable to those found by the Director to prevail in comparable public and private employment positions, § 24–50–104(2), 10 C.R.S. (1982 & 1987 Supp.).[2] During the time period relevant to this case, section 24–50–104(5), 10 C.R.S. (1982 & 1983 Supp.), of the Act

---

1. This court has jurisdiction pursuant to § 13–4–102(1)(b), 6A C.R.S. (1987).

2. Since the time of the activities involved in this suit, some provisions of the State Personnel System Act have been substantially amended.

required the Director annually to conduct a salary and benefit survey to determine comparable compensation rates prevailing in the public and private sectors and to forward compensation recommendations to the Governor for submission to the General Assembly.[3]

On March 1, 1983, the Director submitted to the Governor recommended salary adjustments for the fiscal year beginning July 1, 1983. These recommended adjustments were based upon the Department's 1983 salary survey and included a recommendation that the hearing examiners receive an approximate 7.5% salary decrease.

On March 22, 1983, the hearing examiners filed an appeal of the recommended salary decrease with the Board, *see* § 24–50–104(5)(c)(II), 10 C.R.S. (1982) (persons affected by Director's actions may petition for Board review within fifteen working days after publication of proposed pay plan), generally challenging the data collection procedures and alleging specifically that the Director erred by failing to include in the survey salaries of comparable positions in the federal government. The hearing examiners asserted that had a valid study been conducted the proper recommendation would have been that the examiners receive a 7.5% increase in salary rather than a 7.5% decrease.[4]

On March 31, 1983, the Board issued a memorandum noting that its review would be conducted in a summary fashion, that no

hearings would be held and that a request had been made of the Department that it file its response to all the appeals no later than April 12, 1983. On April 11, 1983, the Department filed its response to the appeals. On April 13 and April 22, 1983, the hearing examiners filed additional data they had collected in their own survey. On April 22, 1983, the Director submitted a written statement to the Board urging that the Board not consider the additional data because the timely filed data had already been transmitted to the Department for its response. On April 27, 1983, the Board issued an oral policy statement that no exhibits submitted after the March 22 filing deadline would be considered; on May 3, 1983, the Board issued a written ruling to the same effect. On June 2, 1983, the hearing examiners submitted more data collected in their own survey.

On June 30, 1983, the Board issued its order upholding the Director's recommendations. The Board noted that when errors raised by the hearing examiners were corrected the final survey recommendations remained unchanged. The Board concluded that the Director properly surveyed comparable state government positions without also obtaining salary data respecting federal government positions.[5] The hearing examiners then sought judicial review of the Board's action in the district court. *See* § 24–50–103(6), 10 C.R.S. (1982); § 24–4–106(4), 10 C.R.S. (1982).

3. Section 24–50–104(5) was amended subsequent to the time the salary surveys at issue in this case were conducted and now provides that the Director shall utilize the results of surveys conducted by nonstate public or private agencies, § 24–50–104(5)(a), 10 C.R.S. (1987 Supp.).

4. Although the Director recommended a 7.5% decrease in salary for the hearing examiner class, the hearing examiners received no decrease for the fiscal year beginning July 1, 1983, because the General Assembly determined that no state employees would receive salary reductions for that fiscal year. *See* Act approved May 31, 1983, ch. 252, § 4, 1983 Colo. Sess. Laws 847, 851. Although during oral argument to this court counsel for the Director and the Board initially suggested that the General Assembly's action rendered moot any consideration of the propriety of the 1983 salary survey recommendations, said counsel acknowledged

that the issue of the validity of the 1983 recommendations would not be moot if the hearing examiners demonstrated, as they alleged, that they should have received an increase in salary that year. Moreover, consideration of the hearing examiners' claim respecting the 1983 salary recommendations falls within an exception to the mootness doctrine because the issues raised are capable of repetition yet potentially evading review. *See, e.g., Massey v. People,* 736 P.2d 19 (Colo.1987); *People v. Freeman,* 735 P.2d 879 (Colo.1987); *People v. Quinonez,* 735 P.2d 159 (Colo.1987); *Urevich v. Woodard,* 667 P.2d 760 (Colo.1983); *Goedecke v. Department of Insts.,* 198 Colo. 407, 603 P.2d 123 (1979).

5. The Board also ordered the Department to demonstrate to the Board whether there were any comparable local jobs upon which to conduct a local survey; that portion of the order, however, is not at issue before this court.

On March 1, 1984, the Director published recommended salary adjustments for the fiscal year beginning July 1, 1984. This 1984 document included a recommendation, based upon the Department's 1984 salary survey, that the hearing examiners receive an approximate 7.5% salary increase. On March 22, 1984, the hearing examiners filed an appeal with the Board, asserting that the Department's 1984 survey had employed improper data collection techniques. The hearing examiners argued, based upon data they had collected and the analysis of that data by an economist whose services they had retained, that had proper techniques been employed the salary study would have indicated that the examiners should be given a 20.0% increase in salary rather than merely a 7.5% increase. The hearing examiners also asserted that section 24–50–104(5), 10 C.R.S. (1982 & 1983 Supp.), was unconstitutional because, by failing to require a hearing before the Board, it deprived them of their property without due process of law.

On June 26, 1984, the Board issued its decision affirming the Director's recommendations. The Board found the data underlying the survey were valid and adopted the Department's actions respecting survey methodology and final application of data. The hearing examiners appealed the Board's action to the district court and filed a motion to consolidate the case with the case challenging the 1983 salary survey. The motion was granted. After conducting a hearing, the district court issued an order affirming the orders of the Board respecting both the 1983 and 1984 salary surveys and concluding that section 24–50–104(5), 10 C.R.S. (1982 & 1983 Supp.), was not unconstitutional. We affirm.

## II

The hearing examiners argue that by employing improper methodology, including a failure to sample the salaries and benefits paid to hearing examiners in federal positions, the Director and the Department obtained invalid salary data for the 1983 and 1984 salary surveys, thus violating section 24–50–104, 10 C.R.S. (1982 &

1983 Supp.). We find the hearing examiners' argument unpersuasive.

During the time period pertinent to this case, section 24–50–104(2)(a), 10 C.R.S. (1982 & 1983 Supp.), provided in pertinent part as follows:

It is ... the policy of the state, in recruiting and retaining competent personnel, to compensate such officers or employees with salaries, fringe benefits, including retirement benefits, working conditions, and hours of work comparable to those found by the state personnel director to prevail for comparable kinds of employment in typical places of public and private employment with which the state competes in recruiting personnel....

Section 24–50–104(5), 10 C.R.S. (1982 & 1983 Supp.), also provided in pertinent part as follows:

**Salary and fringe benefits survey.** (a) To determine comparable rates for salaries and fringe benefits prevailing in other places of public and private employment, the state personnel director shall annually conduct a salary and fringe benefit survey. In conducting the survey, the state personnel director shall select various key classes, including, as applicable, classes at the entrance, supervisory, and management levels of occupational series within the classification plan, to be used in establishing prevailing rates for all classes and employees in the state personnel system....

(b) In order to establish confidence in the salary and fringe benefits survey, the state personnel director shall meet and confer in good faith with management and employee representatives of the state for the design and methodology of the survey. The state personnel director shall develop and publish a statement of policy and a manual of procedures detailing the methodology used in the selection and description of the key classes to be used in the survey, the selection of the survey sample, and the system used in the collection, tabulation, analysis, and application of the survey data. The survey shall include a fair

sample of public and private employments in what the state personnel director determines to be the competitive labor market area for various key classes, including areas of the state which are outside the Denver metropolitan area. The state personnel director may use the results of other appropriate surveys conducted by public or private agencies and may contract with such agencies to conduct the survey.

(c)(I) The state personnel director shall use valid statistical techniques and, after collecting all appropriate data, shall review the data and shall determine whether it is valid.

In September of 1982, the Department published its procedures manual for the conduct of the 1983 salary survey. The manual defined as follows which occupations would be subject to national surveys of salary levels:

National surveys of all states shall be conducted annually to determine the proper salary levels for critical occupations for which recruiting and retention is national in scope, for management levels, and for other classes for which additional data is determined to be necessary or classes which are unique to state governments.

The procedures manual provided in general terms that national survey samples would "include, if possible, the participation of all forty-nine states." The manual also detailed the specific procedures to be used in collecting and verifying the other states' data as follows:

Salary and fringe benefit data shall be collected through the use of mailed questionnaires directed to the central personnel agency of each state or participating organization. Survey classes shall be so identified as to ensure comparability of reporting by the various states. Questionable reporting shall be verified by phone or mail, and questionable data not so verified shall be excluded.

In October of 1982, the Department published its designation of key classes to be surveyed within each occupational group, as well as the capsule description for each key class—the concise description of the minimum qualifications, common titles and general nature and level of work applicable to the key class. The Department specifically identified the key class for hearing examiners as Hearing Examiner I–C and stated that a national survey would be conducted for that key class. The Department conducted its 1983 salary survey pursuant to its procedures manual, including a national survey of the Hearing Examiner I–C key class. The Director's 1983 recommended salary adjustments were based upon this survey.

In their appeal to the Board, the hearing examiners challenged the validity of the salary survey on the following grounds: (1) the Department relied upon individuals in the central personnel agencies of other states to respond with appropriate information and thus obtained information which did not correlate with the actual duties of some of the members of the hearing examiner class; (2) the federal government should have been used as one sample in the national survey; and (3) the Department should have included samples from *all* states having a position matching that of the Hearing Examiner I–C key class. The hearing examiners raised these same objections in their petition for judicial review of the Board's affirmance of the salary recommendations.

On September 30, 1983, while review of the 1983 salary recommendations was pending in the district court, the Department published its procedures manual for the conduct of the 1984 salary survey. The manual detailed in language identical to that of the 1983 manual the procedures to be used to determine which occupations would be subject to national salary surveys and the methodology to be employed in collecting national survey data. Appended to the manual was a 1984 salary survey summary outlining the major steps to be taken in the conduct of the survey, the dates on which the steps would be taken, as well as the dates by which any comments would be due, and stressing the importance of submitting before the completion of the survey any suggestions that

would make the survey more accurate.[6] The Department also published its designation of the key class to be surveyed within each occupational group and the capsule description for each key class.

The Department's 1984 salary survey was conducted pursuant to the 1984 procedures manual, although with respect to the hearing examiner class the Department additionally verified each matching sample by telephoning the central personnel agency of each state. The Director's 1984 recommended salary adjustments were based upon that survey. In their appeal to the Board the hearing examiners asserted that the 1984 salary survey was invalid for the same methodological reasons that the 1983 survey was purportedly invalid.

◼ The hearing examiners argue here, as they did before the Board, that the Department acted improperly in conducting the 1983 and 1984 surveys by mailing capsule descriptions of the Hearing Examiner I–C key class to central personnel agencies of other states and then relying upon individuals in those agencies to match the capsule descriptions with comparable jobs in their states. The hearing examiners concede, however, that their job description as set forth in the capsule description was accurate. Moreover, pursuant to the 1983 procedures manual, if any response appeared to vary significantly from the other returns, the Department verified the accuracy of the match by telephone inquiry. With respect to the validity of three specific responses in 1983 challenged by the hearing examiners, the Department determined by telephone inquiry that one was correct and two were incorrect. The Department

concluded that removal of the two inaccurate responses from the data did not affect the ultimate 1983 salary recommendations. That conclusion is not challenged by the hearing examiners. In 1984, the Department verified all matches for the hearing examiner class by telephone inquiry. We find no impropriety in this sampling methodology.

◼ On appellate review, an administrative decision will not be reversed if its findings are supported by substantial evidence when the record is considered as a whole. § 24–4–106(7), 10 C.R.S. (1982); *see also DeScala v. Motor Vehicle Div.*, 667 P.2d 1360 (Colo.1983). Section 24–50–104(5)(c)(II), 10 C.R.S. (1982), authorized the Board to overturn the Director's actions only if those actions were found to be arbitrary, capricious, unreasonable or contrary to rule or law. Assuming the validity of the surveys in question, the Director's 1983 and 1984 recommendations are amply supported by the record of the two administrative proceedings. *See, e.g., Eliopulos v. Colorado State Personnel Bd.*, 705 P.2d 1035 (Colo.App.1985) (Director's actions vested with presumption of validity); *Bernstein v. Livingston*, 633 P.2d 519 (Colo. App.1981) (same conclusion). The use of a particular methodology involves a substantial element of policy judgment by the Director. When, such as here, the reasonableness of a government agency's regulation is based on policy judgment, a court should not substitute its judgment for that of the agency. *See, e.g., Citizens for Free Enter. v. Department of Revenue*, 649 P.2d 1054 (Colo.1982).[7] Although some

---

**6.** It is reasonable to conclude that the provisions of section 24–50–104(5)(b), 10 C.R.S. (1982 & 1983 Supp.), requiring the Director to publish a procedures manual and specifically delineate the methodology to be used in conducting each salary survey assisted in channeling the Director's discretion and ensuring an opportunity for objection to survey methodology without compromising the expeditious completion of the survey. Upon publication of the 1983 and 1984 procedures manuals, as well as upon other occasions prior to the commencement of either of the surveys, the Director invited written comment on any of the methodology to be used in the surveys. The hearing examiners do not al-

lege that they submitted any comment prior to the completion of either survey.

**7.** The hearing examiners urge that their analysis of the Department's 1984 salary survey indicates that some states the Department included as valid matches in its 1983 survey were not included in the 1984 survey matches, that three of the jobs listed in the 1984 survey reflected a greater than 20.0% increase in pay over the 1983 survey and, therefore, that the 1983 survey must be deemed invalid as a matter of law. However, we cannot agree that the only conclusion to be drawn from such survey comparisons is that the survey responses gathered by the Department in 1983 were necessarily invalid.

other methodology might have been appropriate, the Director's decision in 1983 to verify only data which substantially varied from other responses, in the absence of any allegation of a pre-survey challenge to the use of this methodology, cannot be deemed arbitrary, capricious, unreasonable or contrary to rule or law. Similarly, the use of telephone inquiries to verify all sample matches for the hearing examiner class in 1984 cannot be deemed violative of section 24–50–104.

■ The hearing examiners argue that any statutorily valid salary survey must include samples from the federal government and from every state in which there is a position matching that of the Hearing Examiner I–C key class. They rely upon section 24–50–104(5)(a), 10 C.R.S. (1982 & 1983 Supp.), for this argument. However, that statute merely required the Director to survey salaries "prevailing in other places of public and private employment." It did not require that a survey be conducted of *all* other places of public and private employment. Similarly, section 24–50–104(2)(a), 10 C.R.S. (1982 & 1983 Supp.), provided generally that the policy of the state was to pay salaries "found by the [Director] to prevail for comparable kinds of employment in *typical* places of public and private employment with which the state competes in recruiting" (emphasis added) and section 24–50–104(5)(b), 10 C.R.S. (1982 & 1983 Supp.), required that the survey include "a fair sample of public and private employments in what the [Director] determines to be the competitive labor market area." All of these provisions reflect a legislative decision to invest discretion in the Director respecting the concept and extent of the survey. That decision no doubt represented a conscious choice by the General Assembly to accomplish the completion of the salary surveys within the rigid time constraints inherent in the timely

preparation of yearly salary adjustment recommendations.[8]

The Department sent questionnaires for both surveys to all forty-nine survey states. The Department included in both surveys all the responses it received representing salaries of comparable positions. Although not all of the states responded, there is no evidence in the record that the Department withheld samples of comparable jobs. The fact that the hearing examiners obtained from individuals in some state agencies responses which were apparently not supplied to the Department does not suggest any unreasonable conduct by the Department. Under these circumstances, we conclude that the Director did not abuse the discretion accorded her under section 24–50–104 in excluding federal government agencies from the surveys and relying upon the matching responses the Department actually received in formulating her 1983 and 1984 salary adjustment recommendations.

### III

The hearing examiners argue that section 24–50–104(5)(c)(II), 10 C.R.S. (1982), violated their constitutional rights to due process of law by depriving them of a hearing before the Board. *See* U.S. Const. amends. V, XIV, § 1; Colo. Const. art. II, § 25. We do not agree.

■ Statutes are presumed to be constitutional, and a party asserting that a particular statute is unconstitutional assumes the burden of establishing such assertion beyond a reasonable doubt. *E.g.,* *People v. O'Cana,* 725 P.2d 1139 (Colo. 1986); *Bollier v. People,* 635 P.2d 543 (Colo.1981). Section 24–50–104(5)(c)(II), 10 C.R.S. (1982), provided in pertinent part as follows:

> Any person directly affected by the state personnel director's actions ...

8. The purpose of the survey is, of course, to obtain data upon which to base salary adjustment recommendations for most classes of state employees each fiscal year. *See* § 24–50–104(5)(a), 10 C.R.S. (1982 & 1983 Supp.). During the time period pertinent to this case, the Director was required to submit final salary recommendations to the Governor by March 1 of each year, § 24–50–104(5)(e), 10 C.R.S. (1982), and the Board was required to order any salary re-surveys no later than June 1 of each year, *see* Act approved May 31, 1983, ch. 252, § 4, 1983 Colo.Sess.Laws 847, 850.

may petition the board for review of the state personnel director's action within fifteen working days after the proposed pay plan has been released by the state personnel director. If the board decides to review the state personnel director's action, it shall do so in summary fashion, without referring it to a hearing officer, and on the basis of written material which may be supplemented by oral argument, at the discretion of the board....

The hearing examiners rely upon *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), for the proposition that the provision permitting summary review deprived them of their constitutional right to due process of law. In *Goldberg*, the United States Supreme Court held that a hearing is constitutionally necessary prior to termination of welfare benefits. That case is distinguishable from the circumstances presented here, however. In *Goldberg*, the Court carefully noted that procedural due process requirements were applicable because the welfare benefits there disputed were "a matter of statutory entitlement for persons qualified to receive them." *Goldberg v. Kelly*, 397 U.S. at 262, 90 S.Ct. at 1017 (footnote omitted). Here, the hearing examiners have not asserted any statutory entitlement to a particular rate of pay, and we are aware of none.[9] Vested property interests protected by the due process clause of the federal constitution need not be created by the Constitution itself, of course; they may be created and their dimensions defined by other sources such as contracts or state statutes or rules. *E.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Board of Regents v. Roth*, 408 U.S. 564 (1972). The hearing examiners have not cited any decision of any jurisdiction supporting the proposition that public employees have a general property right to

receipt of a particular salary. *Compare Hammond v. Temporary Compensation Review Bd.*, 473 A.2d 1267 (Me.1984) (public employees have no general property right to a job at a particular salary) *with City & County of Denver v. District Court*, 196 Colo. 134, 582 P.2d 678 (1978) (under city and county charter employees in civil service acquire vested property interest in the ranks they hold). Something more than subjective expectancy must be at stake to warrant the protections of procedural due process. *See, e.g., Colorado Soc. of Community & Inst. Psychologists, Inc. v. Lamm*, 741 P.2d 707 (Colo.1987); *Denver Welfare Rights Org. v. Public Utils. Comm'n*, 190 Colo. 329, 547 P.2d 239 (1976).

The hearing examiners argue that even if section 24–50–104 created no right to a particular salary, it did create a vested right to have salaries determined by means of valid surveys. This argument loses much of its force in view of the fact that the results of salary surveys are used merely as recommendations for salary levels rather than as ultimate determinants of those levels. Moreover, section 24–50–104(5)(c)(II) explicitly established a procedure for review of the Department's conduct by providing that if the Board decided to review the Director's action at all the appeal would be handled without reference to a hearing officer and could be supplemented by oral argument at the discretion of the Board.[10] Thus, even if the statute is deemed to create a right to have salary level recommendations based on valid surveys, the issue here is whether the procedure adopted by the General Assembly for review of the Director's recommendations adequately protected that right.

 Whether particular procedures adopted to review determinations affecting property interests satisfy due process standards depends upon the circumstances of

---

9. Article XII, § 13(8), of the Colorado Constitution provides that if a person certified to a class or position is "dismissed, suspended, or otherwise disciplined" that action is subject to appeal to the Board with the right to be heard thereby.

10. Under the present version of section 24–50–104(5), inapplicable to the facts of this case, the General Assembly has provided that salary survey recommendations are not appealable. § 24–50–104(5)(g)(I), 10 C.R.S. (1987 Supp.).

the particular case. *E.g., Curnow v. Yarbrough*, 676 P.2d 1177 (Colo.1984); *Carberry v. Adams County Task Force On Alcoholism*, 672 P.2d 206 (Colo.1983). The United States Supreme Court has recognized that courts should consider the following factors in ascertaining the adequacy of specific procedures: the private interest that will be affected by the official action; the risk of an erroneous deprivation of such interest through the procedures used; the probable value of additional or substitute procedural safeguards; and the government's interest in adhering to the existing system. *E.g. Walters v. National Ass'n of Radiation Survivors*, 473 U.S. 305, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985); *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Of significance in applying these standards to the circumstances of this case is the fact that in addition to the availability of an appeal procedure at the conclusion of a survey, interested parties could also suggest changes in methodology to the Department to enhance accuracy prior to the collection of data. *See* § 24–50–104(5)(b), 10 C.R.S. (1982 & 1983 Supp.).[11] The sheer magnitude of the salary surveys, which were conducted for most classes of state employees, and the severe time constraints inherent in completing the process are also significant factors to consider in assessing the adequacy of the procedural protections afforded. Over one thousand individuals annually sought Board review of salary recommendations, and the Board was required to order any re-surveys no later than June 1 of each year. In view of these facts, the governmental interest in expediting completion of the survey process was properly served by the adoption of pre-survey procedures for objecting to methodology. When this aspect of the statute is considered in conjunction with the expedited post-survey appellate procedure, the statute's procedural protections adequately protected any right the hearing examiners had to a valid survey.

The hearing examiners also contend that, in view of the fact that the Department required several months to complete its survey, they were denied due process of law because the time constraints of section 24–50–104(5)(c)(II) and the Board's interpretation of its rule governing appeals unduly restricted their ability to compile evidence of errors in the Department's 1983 survey.[12] Specifically, the hearing examiners challenge the Board's decision to exclude from the appellate proceedings evidence of surveys conducted by the hearing examiners subsequent to the filing of the appeal. We find no due process violation.

The hearing examiners did submit some evidence of purported errors in the Department's 1983 survey at the time they filed their appeal with the Board. The hearing examiners continued to conduct investigation of the adequacy of the Department's techniques, and subsequently sought to introduce the results of that additional investigation. The Board denied the request to submit this additional information, relying primarily on its Rule 3–2–6, which states as follows:

A petition under this rule shall contain specific facts which demonstrate that the petitioner is directly affected by the action of the Director in conducting the pay or fringe benefit survey. The petition shall also contain specific facts which demonstrate the way in which the Director's actions have been arbitrary, capricious, unreasonable, or contrary to rule or law. Failure to comply with the requirements of this rule may result in dismissal of the petition. The Board review of petitions properly filed shall be based on submission of written materials

11. *See supra* note 6.

12. Section 24–50–104(5)(c)(II), 10 C.R.S. (1982), was somewhat ambiguous respecting when written material should be submitted to the Board, stating that the Board's decision would be "on the basis of written material which may be supplemented by oral argument, at the discretion of the board." We note, however, that the Director published contemporaneously with the 1983 salary recommendations an explanatory letter advising that all appeals should "state the rationale for the appeal, evidence that the Personnel Director's actions were arbitrary, capricious or contrary to rule or law as well as how the individual has been directly affected by the Director's actions."

by the parties which may be supplemented by oral argument at the discretion of the Board.

Colorado State Personnel Board Rule 3–2–6.

We find no impropriety in the Board's application of its rule prohibiting the filing of additional matter subsequent to the date upon which the appeal is lodged. Section 24–50–104(5)(c)(II), 10 C.R.S. (1982 & 1983 Supp.), required all appeals to be filed within fifteen working days of the publication of the Department's recommendations. Rule 3–2–6 implemented that statutory requirement, and furthered the legislative policy of encouraging expedited appeals of these determinations. As we have indicated, the discretion granted to the Board by the General Assembly to treat such appeals in summary fashion did not violate the due process rights of the hearing examiners. The Board's exercise of that discretion during the 1983 appeal process to preclude submission of additional documentation during that process was authorized by Rule 3–2–6 and furthered sound legislative policy. Viewed from this perspective, the Board's decision to prohibit the admission of evidence offered subsequent to the filing of the appeal did not violate the due process rights of the hearing examiners.

## IV

The district court granted a motion by the Department to supplement the record of the 1984 salary survey with Department documents detailing the procedures used in the collection and analysis of the 1984 salary survey data, as well as the Department's final salary recommendations for 1984 and its response filed before the Board respecting the hearing examiners' 1984 appeal. The hearing examiners urge that this decision constituted reversible error because much of the additional material had not been presented to or considered by the Board. We agree that the district court erred, but conclude that the error was harmless here.

 District court review of an administrative agency determination is limited to the record before the agency.

§ 24–4–106(6), 10 C.R.S. (1982); *Harris v. District Court*, 655 P.2d 398 (Colo.1982); *Stream v. Heckers*, 184 Colo. 149, 519 P.2d 336 (1974). However, a judgment is presumed correct, and the burden of showing reversible error is upon the party asserting error. *Schuster v. Zwicker*, 659 P.2d 687 (Colo.1983); *Glennon Heights, Inc. v. Central Bank & Trust*, 658 P.2d 872 (Colo. 1983).

 The supplementary evidence submitted to the district court included the actual survey letters sent by the Department, the responses received from other states in 1984, and documents detailing the statistical results of the survey. However, the bulk of the "supplementary" documents consisted of documents which were before the Board in 1984 and had already been certified to the district court, including the 1984 procedures manual and accompanying memorandum, the recommended salary adjustments and accompanying memoranda and the Department's responses to the 1984 survey appeals. The hearing examiners' appeals essentially challenged the validity of the methodology employed by the Director. This methodology was fully delineated in the procedures manual and its accompanying memorandum, both of which documents were entered into evidence before the Board. The methodology was further described in the Department's response to the hearing examiners' appeal, which response was also of record before the Board. Of course, the results of the survey conducted by the hearing examiners themselves would not have established that the Director's survey results were erroneous if the two surveys were not compared. As the hearing examiners point out, the actual survey results obtained by the Department on a state-by-state basis were supplied to the Board by the hearing examiners for purposes of comparison with the results of their own study and were also appended to their opening brief before the district court.

Given the circumstances of this case, including the limited utility of the documents admitted by the court though not in evidence before the Board, we conclude that

admission of the supplementary documents was harmless error.

## V

■ The hearing examiners finally urge that the district court committed reversible error by failing to enter a sufficiently detailed order. We do not agree.

The judgment of a court is presumed correct, and the burden is on the party asserting error to prove reversible error. *E.g., Schuster v. Zwicker,* 659 P.2d 687 (Colo.1983); *Glennon Heights, Inc. v. Central Bank & Trust,* 658 P.2d 872 (Colo. 1983). Here, the district court made no oral findings; its written order consisted of a statement that both of the Board's orders were affirmed and that section 24–50–104(5)(c)(II), 10 C.R.S. (1982 & 1983 Supp.), was not unconstitutional. The hearing examiners contend that such an order violates the requirements of section 24–4–106(7), 10 C.R.S. (1982), and C.R.C.P. 52.

Section 24–4–106(7), 10 C.R.S. (1982), provides in pertinent part as follows:

> If the court finds no error, it shall affirm the agency action.... In all cases under review, the court shall determine all questions of law and interpret the statutory and constitutional provisions involved and shall apply such interpretation to the facts duly found or established.

Although this statutory provision requires the court to determine questions of law and apply its interpretation of statutory and constitutional provisions to the facts, it does not require the court to explain or describe that process in writing.

Rule 52 of the Colorado Rules of Civil Procedure states in pertinent part as follows:

> In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon....

As this court has recognized, the requirement of an explicit statement of findings by the trial court affords the appellate court a clear understanding of the grounds upon which the trial court rested its decision. *E.g., Mau v. E.P.H. Corp.,* 638 P.2d 777 (Colo.1981); *Hipps v. Hennig,* 167 Colo. 358, 447 P.2d 700 (1968); *Murray v. Rock,* 147 Colo. 561, 364 P.2d 393 (1961). However, the principal thrust of C.R.C.P. 52, as well as its underlying rationale, is directed toward those instances wherein a court sits as a trial court. *See, e.g., Mau v. E.P.H. Corp.,* 638 P.2d 777. Here, the district court's review was a limited review of the record created before an administrative agency in light of written and oral arguments respecting the reasonableness of that agency's action. Under such circumstances, although the district court's order leaves this court with no meaningful guidance respecting the rationale upon which the district court reached its conclusion, this court is nonetheless able to review the record before the administrative agency for determination of whether that agency erred in upholding the Director's salary recommendations, *see, e.g., Lassner v. Civil Serv. Comm'n,* 177 Colo. 257, 493 P.2d 1087 (1972) (where review in lower court is limited to record before administrative agency, appellate court is in as good a position as lower court to determine if agency's action is supported by substantial evidence); *see also DeScala v. Motor Vehicle Div.,* 667 P.2d 1360 (Colo.1983) (involving appellate court review of record to determine if agency's action supported by substantial evidence).[13] We, therefore, conclude that no reversible error occurred respecting the district court's final order.

## VI

For the reasons indicated, the judgment of the district court is affirmed.

MULLARKEY, J., does not participate.

---

**13.** We note that the hearing examiners have not challenged the sufficiency of the Board's orders; therefore, we need not address that issue.