**ROBERTS CONSTRUCTION COMPA-
NY, INC., and Alvarado
Construction, Inc., Plaintiffs,**

v.

**UNITED STATES SMALL BUSINESS
ADMINISTRATION,** an agency of
government of the United States of
America, and James C. Sanders, Ad-
ministrator of the United States Small
Business Administration, Defendants.

Civ. A. No. 85–K–1105.

United States District Court,
D. Colorado.

April 6, 1987.

Hubert A. Farbes, Jr., and Jo Frances Walsh, Conover, McClearn & Heppenstall, Denver, Colo., for plaintiffs.

Colleen L. Conlin, Asst. U.S. Atty., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

In this case Roberts Construction Company, Inc. and Alvarado Construction, Inc. allege the United States Small Business Administration and its Administrator have committed various violations of the Small Business Act of 1953, as amended, 15 U.S.C. §§ 631 *et seq.*, the Small Business Investment Act of 1958, as amended, 15 U.S.C. §§ 661 *et seq.* and regulations of the Administration codified at 13 C.F.R. 124.1–1(f). More specifically, plaintiffs allege the SBA exceeded its statutory authority by improper implementation of a standard operating procedure (SOP 80–05). Plaintiffs claim this standard operating procedure violates the rights granted them by Congress as participants in the SBA's 2[8](a) program.

This case requires me to decide whether the formulation and implementation of SOP 80–05 was arbitrary and capricious; whether it was plainly erroneous and inconsistent; whether it circumvented congressional intent; and, ultimately, whether plaintiffs

are entitled to reinstatement in the 2[8](a) program.

Plaintiffs seek a declaratory judgment, pursuant to Fed.R.Civ.Proc. 57, and 28 U.S.C. § 2201, and attorney fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

Defendants claim that the SBA's internal operating procedures are not reviewable. Defendants also claim that even if the SBA's internal operating procedures *are* reviewable, SOP 80–05 is lawful proper, and comports with congressional intent. Further, defendants assert SOP 80–05 was properly applied to plaintiffs.

This action is now before me pursuant to cross-motions for summary judgment (Federal Rule of Civil Procedure 56). I now rule on these motions.

## I.

## STATEMENT OF FACTS

The Small Business Administration's 2[8](a) program is a device to promote small businesses which meet certain criteria. It was created by Congress "to foster business ownership by individuals who are both socially and economically disadvantaged," and "promote the competitive viability of such firms by providing available contract, financial, technical, and management assistance as may be necessary." 15 U.S.C. § 631(e)(2)(A) and (B); 13 C.F.R. § 124.1–1(b)(1) and (2). The 2[8](a) program is not a grant program, but rather allows qualified socially and economically disadvantaged firms the opportunity to obtain government contracts through the SBA, minimizing the effects of strong competition from non–2[8](a) private firms.

■ The ultimate goal of the 2[8](a) program is to allow firms with initially restrictive credit and bonding opportunities a chance for growth, eventually leading to independent survival in the marketplace.[1]

The 1978 amendments to the Small Business Act demonstrate a strong congressional intent to "expeditiously ameliorate the conditions of socially and economically dis-

---

**1.** *See generally:* Pub.L. No. 95–507, 92 Stat. 1757 (1978), enacted October 24, 1978.

advantaged groups ... [by providing] maximum practicable opportunity for development of small business concerns" owned and operated by members of disadvantaged groups.[2]

Before the enactment of Pub.L. 96–481 (October 21, 1980) the businesses participating in the 2[8](a) program could do so indefinitely without graduating into conventional private sector contract competition. Explaining some concerns prompting the 1980 legislation, Senator Morgan stated:

... it appears to many of us in the Congress that participants in this particular Government procurement program seldom appear to move on to regular Government procurement programs or, indeed, to simply compete in the private sector, which is the ultimate purpose of the law.

It has not been the goal of the program to keep certain firms on Government contracts forever. The ultimate goal of most minority firms is to get their operations going and then move off into successful competition in the private sector. The continued participation of a few firms, in the absence of some compelling need, only injures those other small businessmen who could enter the marketplace through the 2[8](a) program.

S. Rep. No. 974, 96th Cong., 2d Sess. (1980), p. 22, U.S.Code Cong. & Admin. News 1980, pp. 4953, 4974.

The prolonged participation concerns were resolved by Pub.L. 96–481 (1980) requiring, as interpreted by the congressional conference substitute, that the anticipated graduation date be included in the business plan of the 2[8](a) contractor, and that one year before that date, at the request of the 2[8](a) firm, SBA consider extension of the term if "necessary and appropriate." H.R. Report No. 1434, Conference Report to accompany H.R. 5612, 96th Cong., 2d Sess. (1980), p. 16, U.S.Code Cong & Admin. News 1980, p. 5005. This quantified length of time is known as the "fixed program

participation term" (FPPT). The FPPT requirements applied both to new applicants and those participating in the 2[8](a) program at the time of Pub.L. 96–481 enactment. Existing 2[8](a) participants were required to formulate a specific business plan including specific business objectives and a fixed graduation date before further contracts were awarded under the program. Pub.L. 96–481 (1980) required graduation dates for existing 2[8](a) firms to be determined by April 21, 1982.

The proposed rule for converting Pub.L. 96–481 (1980) into SBA policy was published in the Federal Register on June 1, 1981 for notice and comment. The SBA held hearings on the FPPT issues in Los Angeles, Chicago, Atlanta, and Washington, D.C. during the rule's formulative period. On the basis of these hearings and some 289 written comments from various groups and individuals, the SBA promulgated 13 C.F.R. § 124.1 *et seq.* as called for under Pub.L. 96–481.[3]

The promulgated rule provided a *maximum* FPPT of five years for all 2[8](a) firms, but allowed that—not less than one year before the term was due to expire—an extension could be granted "for a period not to exceed the difference between the FPPT established in the business plan and the FPPT authorized herein, plus two years." 13 C.F.R. § 124.1–1(f)(4)(i). Under this system, the actual *maximum* period for program participation became seven years.

At the time in question the SBA had roughly 2400 participants in the 2[8](a) program. Its limited resources made it infeasible to negotiate a FPPT with each firm. Therefore, in order to treat each firm fairly, objectively, and uniformly, SBA devised Standard Operating Procedure 80–05 (SOP 80–05), an internal guide for use by SBA staff to assure uniform application of 13 C.F.R. § 124.1–1(f). Affidavit of Edward C. Neal (defendants' exhibit A).

SOP 80–05 contains several criteria gleaned roughly from the language of 13

---

**2.** Pub.L. No. 95–507 § 201(e)(1)(D) & (E) (codified as amended at 15 U.S.C. §§ 631(e)(1)(D) & (E)).

**3.** *See generally* Affidavit of Edward C. Neal, July 8, 1986.

C.F.R. 124.1–1(f).[4] Each criteria is prescribed a numerical point value. The length of participation requests from 2[8](a) firms are evaluated on the basis of a scoring system. The total numerical point value determines the FPPT of each 2[8](a) firm. SOP 80–05 is an administrative tool attempting to determine uniformly which businesses deserve maximum FPPTs, and which are entitled to less than the maximum term. To determine any later extension of the FPPT, the point system and a narrative encompassing several factors are considered.

Roberts Construction Company was a participant in the 2[8](a) program from 1977 until its "graduation" on April 20, 1985. Alvarado Construction participated in the program from 1976 until October 14, 1985. The affidavits indicate that during the 2[8](a) participation period both Alvarado Construction and Roberts Construction grew substantially.

In 1976 Roberts Construction was a business with seven full-time employees, no credit history, limited borrowing and bonding capacity, and few assets. In 1986 Roberts had 25 full-time employees, a professional management staff, a 3 million dollar bonding capacity, and a $180,000 credit line.[5] Mr. Roberts estimates he performed construction contracts totaling $30–$32 million between 1977 and 1985.[6]

Similarly, in 1975 Alvarado Construction had no credit history or experience, marginal borrowing and bonding capacity, and two management employees. By 1986, Alvarado Construction had grown substantially in size, sophistication, and financial value— boasting a twenty-seven employee management staff.[7]

In January of 1982, based upon a notice received from SBA regarding establishment of fixed program terms, Roberts Construction submitted its required plan and requested a five year FPPT. In March of 1982 Roberts Construction received a notice from the SBA to the effect that the results of the numerical scoring of the firm

under SOP 80–05 resulted in 500 points. This high score qualified Roberts Construction for only one more year of program 2[8](a) participation. Roberts Construction later received a six month extension, and still later an *additional* eighteen month extension. On April 20, 1985 Roberts Construction was "graduated" from the SBA's 2[8](a) program after some eight years of participation.

Alvarado Construction underwent a similar course of procedure, receiving first a FPPT of one year under SOP 80–05, later extended to eighteen months. Still later, Alvarado was given an *additional* two year FPPT extension. On October 14, 1985, Alvarado Construction was "graduated" from the 2[8](a) program.

## II.

### STANDARD OF REVIEW

The established litany tells us that summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.Proc. In determining the existence of any genuine issue of material fact, the record is construed in the light most favorable to the party opposing the motion. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir.1980). The adverse party, however, "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e).

## III.

### CONCLUSIONS OF LAW

A.  *SOP 80–05 is subject to judicial review.*

■ My review of the actions and procedures of the SBA is appropriate.

---

**4.** SOP 80–05, Bulletin #3 criteria.

**5.** *See* Affidavit of William R. Roberts, July 10, 1986.

**6.** *Ibid.*

**7.** *See* Affidavit of Robert L. Alvarado, July 10, 1986.

There is a basic presumption of judicial review for one suffering a legal wrong because of, or adversely affected or aggrieved by, agency action.

*Sabin v. Butz,* 515 F.2d 1061, 1091 (10th Cir.1975) (*citing Abbott Laboratories v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681).

[T]he courts are the final authorities on issues of statutory construction [and] are not obliged to stand aside and rubber stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute.

*SEC v. Sloan,* 436 U.S. 103, 118, 98 S.Ct. 1702, 1712, 56 L.Ed.2d 148 (1977) [citations omitted].

Plaintiffs allege the SBA abused its discretion when it formulated and applied SOP 80–05 (Bulletin # 3). The agency action and policy is therefore subject to my review.

## B. Review of the issues presented.

■ Having found SBA policies subject to judicial review, it is important to note that judges should refrain from substituting their own interstitial lawmaking in the place of the agency's, so long as the agency's lawmaking is not "irrational". *Ford Motor Credit Company v. Milhollin,* 444 U.S. 555, 568, 100 S.Ct. 790, 798, 63 L.Ed.2d 22 (1980).

The [Supreme] Court has often repeated the general proposition that considerable respect is due 'the interpretation given a statute by the officers charged with its administration,' [citations] [and] an agency's construction of its own regulations has been regarded as especially due that respect.

*Ford Motor Credit Co. v. Milhollin, supra* at 556, 100 S.Ct. at 792. [*citing Boweles v. Seminole Rock Co.,* 325 U.S. 410, 413–414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700].

■ This deference is especially appropriate if agency expertise or technical knowledge is involved, or if the agency's construction is contemporaneous with the regulation's promulgation. *Emery Mining*

*Corp. v. Secretary of Labor,* 744 F.2d 1411, 1415 (10th Cir.1984). The controlling caselaw requires that, in reviewing the construction of a statute or regulation, courts must accord "great deference" to the interpretation given a statute or regulation by the agency charged with its administration. *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Hoover & Bracken Energies, Inc. v. U.S. Dept. of Interior,* 723 F.2d 1488, 1489 (10th Cir. 1983) *cert. denied* 469 U.S. 821, 105 S.Ct. 93, 83 L.Ed.2d 39 (1984); *Grynberg v. Watt,* 717 F.2d 1316, 1318 (10th Cir.1983) *cert. denied* 466 U.S. 958, 104 S.Ct. 2169, 80 L.Ed.2d 553 (1984). In addition, the SBA is granted broad discretionary powers to promulgate rules and regulations under 15 U.S.C. § 634(b)(6).

■ Finally, the "plainly erroneous or inconsistent" standard of review applies to an administrative agency's interpretation of its own regulations. *Udall, supra* 380 U.S. at 17, 85 S.Ct. at 801; *Hoover & Bracken Engergies, supra* at 1489. Further, an agency's construction of regulations need only be a reasonable one. *Udall, supra* 380 U.S. at 16, 85 S.Ct. at 801.

■ Although regrettably disadvantageous to plaintiffs, SOP 80–05 does not constitute an arbitrary, unreasonable, erroneous or inconsistent exercise of the SBA's power. The purpose of SOP 80–05, Bulletin # 3 was to implement the concerns of Congress as expressed in Pub.L. 96–481 (1980). "Pub.L. 96–481 expressly directs the SBA to promulgate regulations setting time limits on 8(a) participation." *Minority Business Legal Defense Fund, Inc. v. Small Business Administration, et al.,* 557 F.Supp. 37 (D.C.1982), unpublished. (defendants' exhibit E, p. 4). A reading of SOP 80–05, Bulletin # 3 shows the language practically mirrors that of 13 C.F.R. § 124.1–1(f) in establishing FPPT criteria based upon economic disadvantage and private sector competitiveness. I find 13 C.F.R. § 124.1–1(f) is in accord with congressional intent. The point scoring system, which plaintiffs find so offensive, is

indeed procrustean, but nevertheless a valid tool for making uniform decisions based upon necessarily subjective criteria. Clearly, the fact both plaintiffs, after protest, received extensions on their FPPTs demonstrates SBA's flexibility in applying SOP 80–05.

It is plain from the record that relevant sections of Pub.L. 96–481 were formulated to force graduation of some 2[8](a) firms from the program. Although plaintiffs make an argument that they were economically more viable than many program participants, and therefore more worthy of continued 2[8](a) support, the fact is plaintiffs had benefitted from the program for several years and reached a point of sophistication rendering them arguably competent to "graduate" into the more competitive private sector.

■ The formulation of internal procedures, such as SOP 80–05 is within the agency's discretion, and clearly must stand unless "arbitrary, capricious, [or] an abuse of discretion …". *Camp v. Pitts*, 411 U.S. 138, 36 L.Ed.2d 106, 93 S.Ct. 1241. I find SOP 80–05 is neither arbitrary, nor capricious, nor an abuse of the SBA's discretion.

The record shows quite clearly that SOP 80–05 was merely a procedure for implementing 13 C.F.R. § 124.1–1 *et seq.* which attempted to apply, fairly and equitably, the concerns expressed by Congress in Pub.L. 96–481.

### IV.

### CONCLUSION

The convention system has its faults, of course, but I do not know a better method of choosing a presidential nominee. Harry S. Truman, *Memoirs*, Vol. II, *Years of Trial and Hope*, p. 14.

These words are appropriate here because a similar dilemma confronts the court. SOP 80–05 may have its shortcomings in its uniform application of 13 C.F.R. § 124.1–1(f). In turn, 13 C.F.R. § 124.1–1(f) may not *perfectly* eliminate the concerns of Pub.L. 96–481. Given the intentions of Congress as expressed in the statute and supplemental material, coupled with the regrettably limited resources of the SBA, the method for determining FPPTs applied through SOP 80–05, Bulletin # 3 constitutes a legally permissible exercise of agency discretion.

After review of Pub.L. 95–507 and Pub. L. 96–481 I am convinced SOP 80–05 constitutes a diligent effort by the SBA to comply with the letter and spirit of the statutes and the legislative intent behind Pub.L. 96–481. Although I sympathize with the position of plaintiffs on an emotional level, they were not victims of an arbitrary or capricious exercise of agency power. The SBA has attempted in evident good faith to make its difficult decision-making process as fair and uniform as possible. This is evidenced by the numerical scoring system which, although far from perfect, at least strives to be objective. Further, when plaintiffs protested the length of their FPPT, extensions were granted.

The SBA has established, through SOP 80–05, a workable method for making difficult decisions. It constitutes a valid attempt to best utilize the SBA's limited resources where they are most needed.

IT IS THEREFORE ORDERED THAT:

1. Defendants' motion for summary judgment is granted, and the above-entitled action dismissed.

2. Plaintiffs' motion for summary judgment is denied.