Donald BLAKE, E.A. Barrington, Katherine J. Baum, Charles R. Berger, Ann Bernhoft, Karl S. Berrett, Jeff H. Best, Brian Broomhead, Milton R. Brown, Robert A. Brown, William H. Callahan, Douglas P. Carlson, Paul J. Carreras, Clarence W. Chess, Eddie F. Caley, Eugene Colwell, Sr., Claar Nard, Donna Como, Wesley F. Connett, Valarie L. Craig, Harry R. Cupp, Willis M. Day, Linda K. Deatherage, Curtis W. Devin, Sean P. Dougherty, Lenny Dugger, Gerald C. Fish, William Eugene Duncan, Michael Evans, Randall L. Fashee, Sean Foster, Karl A. Freed, Gary Golder, George Goodwin, Alvin W. Gowdy, R.T. Grabin, Rubin G. Graston, Jose R. Gutierrez, Elizabeth Haines, Janice Harmon, Bobby W. Harris, Don R. Henderson, Rob Henley, Ann M. Henry, James Herzog, Charles Y. Hildebrand, Edward F. Hopkins, Robert F. Ingoariola, Richard Wayne Jantz, Charles L. Jaquez, Norman Jaycox, Bruce C. Johnson, James E. Johnson, Leon Jones, John Jubic, Wilma Anne Kennedy, Louis A. Leyba, Thomas B. Mallory, James B. Maloney, James Mason, Linda McCall, James McClanahan, Roxanne Morin, Jim Meigs, James Gregory McIntyre, Edward J. Miller, Rick Miozzi, Clinton E. Mitchell, Esther M. Montoya, Kelly Murphy, Barbara S. Nelson, Walter Newell, Jr., Darlene M. Nolting, George Payton, Jr., R. John Pierce, Bearly R. Peterson, Franklin J. Pegoraro, Ronald Pifko, Eldon L. Pettit, Mike Patterson, Jerry Poole, Dolly Porter, James P. Potter, N. Richard Provost, Billy Z. Riddle, Richard Robinson, Mike Runner, James W. Ross, Michael J. Ryan, Christopher E. Sabo, R.J. Sabo, Thomas M. Schade, William T. Scutti, Dan Schlesinger, William J. Slack, Clifford L. Smith, Leroy Snook, Larry K. Spurlock, Joe Santee, Coye D. Stanley, Raymond E. Stearns, Fred L. Smith, Delbert D. Smith, Steve Sutoon, Charles L. Teel, Bennie M. Thorton, Stanley J. Thomas, Bjorne P. Thorson, David Torres, William Trenhaile, Terry Lee Vellar, Charles Watson, Cleve Watson, Robert M. Williams, Virgil Lee Williams, James A. Windley, Jr., Kenneth R. Williams, Robert A. Zarr,

Gairald D. Zeiler, Daryl Geringer, Thomas Grebenc, Jr., Josephine Henson, Wanda Gail Koch, Dorothy Marriott, Charlie Marriott, Richard B. Marez, Thomas A. Miller, Leroy J. Sandoval, Richard A. Soares, Connie Stephens, Perry Venard, Lloyd Waide, Louella Watkins, John C. Wyatt, Lavella Clark, Judy Crumm, John A. Early, Michael Ehrmann, Fred J. Ellis, Nona M. Fandrey, Charles Friend, Christopher Green, Lynette Hamilton, David M. Jones, Frederick P. Nelson, Julian A. Padilla, Brent W. Parker, Gerald J. Perko, Richard Pierce, Harry Prewitt, Steve Rossi, Joseph P. Starika, Robert F. Stauffacher, Leslie Talbert, Verle Pomeroy, Richard L. Whittaker, Ronald R. Workman, Richard Bergman, Henry L. Hoffman, Billy G. Budges, Raymond V. Coffee, John T. Dunn, Richard Fernandez, Larry Ken Lara, Merle O. Matthews, Olah Murphy, Gregory M. Rosales, Feliz Salazar, Richard Medina Vasquez, David Watkins, Larry Ray Strong, Alfred J. Shonk, Jeffrey A. McGinnis, Ray Masse, Loren M. Harbert, James Williams, Raymond Lepz, Alan L. Ford, Robert E. Koch, Michael L. Files, Tom Arguello, Tommy J. Jennings, Jane A. Kruse, Emily C. McCulloch, Jerry L. McFarland, Laurie R. McGowan, Corrin Arlett Miller, Samuel J. Minnick, Jr., Betty A. Nichols, Linda Orton, Timothy Pearson, Robin Reynolds, Ruth Richardson, James A. Roberts, Deborah Roybal, Jeri Romanski, Boadie L. Schmidt, John Sudo, Jr., Sheryl Wood, Larry Coffee, John Davis, Florence Esser, Charles Formby, Steven Green, Scott Hall, Richard Hansen, Lawrence Hill, Bobby Johnson, Dave Kissner, William McCurdy, Randy Morrison, Ronald Rich, Gerald Robbins, Carol Tatum, Charles Taylor, Nick Trujillo, William Wells, Michael Badding, Larry Braden, Roger Brown, Wayne Fladeland, Daryl Mullins, Tim Pollard, Lora Saindon, Michael Farrel, V. Paul Hall, Douglas Null, David Slavish, Darold Wardlow, Robert Workman, Susan Worthington, Garth Yergensen, James Barry, John O'Brian, Donna Garrett, C.M. Kennedy, Jr., Dan Korber, Olivia Graston, David M. Jones, Ernst F. Baumann, J. Maloney, Ronald J. Viola, Esther M. Montoya, Ann Marie Henry, Scott Filer, Ernie Mueller, Albert Clanton, James Cowan, Paul Enerle, Donald A. Morton, H. James, S. Johnson, John K. Parmenter, Diane Bails, Anthony Cavalli, Devin Coblentz, Robert Counter, James Eggleston, Joseph Giganti, Cyril Granzella, Jerry Hawthorne, Donald Hill, David Ingrahm, Leland Leak, Guy Montera, Leland Myers, Walter Packard, Charles Baker, Kenneth Clark, Gerald Colgate, Paul Cunningham, Steven Evans, Karl Gilge, Connie Hatfield, James Heiny, Lawrence Humburg, Bill Jensen, Joe Martellaro, Gary Merrifield, James Morgan, William Nelson, Sharon Patterson, Richard Beauregard, Cecil Hansen, Gary Hoffman, Steven Little, Theodore Markham, Dennis Milosavich, Dennis Norman, Nathan Patton, Tom Quintana, Amos Sappington, Danny Wood, Wendell Phillips, Thomas A. Reno, Frank Smith, Kenneth Stolba, Udo Von Hohenstraeten, Leroy Quintana, Mary Sharpe, John Stark, Mary Stout, Ron Krause, Joe Ventura, Richard Vasquez, Frank Chace, William E. Lester, Jr., Dan Booher, Peter K. Erwin, Mark Bunch, Capt. R.E. Harlan, Manual C. De Torres, James B. Toothaker, Ann Bernhoft, Sam T. Martin, Suzanna Sosa, Glenola Del Veuker, Marvin H. Dornhecker, Marshall A. Grant, William Terry Frank, Kenneth D. Graczyk, James J. Ellsworth, Raymond M. Hagen, John K. Shroyer, Alfred James Hill, Roland Mar, James H. Smith, Billy Burdges, Plaintiffs–Appellants,

v.

DEPARTMENT OF PERSONNEL, State of Colorado and Shirley Harris, in her official capacity as Executive Director of the Department of Personnel, Defendants–Appellees.

No. 92CA1711.

Colorado Court of Appeals,
Div. I.

March 10, 1994.

Rehearing Denied May 12, 1994.

Vonda G. Hall, Denver, for plaintiffs-appellants.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Michael P. Serruto, Asst. Atty. Gen., Denver, for defendants-appellees.

Opinion by Judge KAPELKE.

Plaintiffs, who are correctional officers with the Colorado Department of Corrections, appeal the district court's judgment dismissing their complaint seeking review of a decision of the Executive Director of the State Department of Personnel (Director). The Director's decision had implemented a study recommendation that resulted in a reduction of plaintiffs' compensation. We affirm.

The Department of Personnel (Department) conducted an Occupational Study of Correctional Classes, or "systems maintenance study," regarding the appropriateness of the existing correctional officer classifications and salary levels. As part of the study, the Department examined the salary relationships between the correctional officer classes in an effort to determine whether the officers' pay grades or salary rates should be adjusted.

The Department's study, which was issued in 1991, contained four salary comparisons. The correctional officers' salary levels were compared with the salaries of: 1) jailers with front range sheriffs' departments; 2) comparable correctional officers' classes in the central states region; 3) correctional classes and levels in the federal corrections system; and 4) corrections classes in all fifty states, the District of Columbia, and the U.S. Bureau of Prisons.

As a result of this study, the Department concluded that Colorado corrections officers were being paid more than the salary rate prevailing in local, regional, and national markets and that the pay grades assigned to the correctional classes should be reduced by five pay grades, representing a salary reduction of 12.5%.

Numerous employees challenged the study by appeal to the Director. The Director held public hearings and conducted a detailed review of the challenges raised on appeal. In her decision upholding the report and the salary grade reductions, the Director concluded that the data compiled in the study supported the salary grade reduction.

Upon review, the district court concluded that the Director's decision was not arbitrary and capricious or contrary to law.

I.

Plaintiffs first argue that the Department's systems maintenance study was an unauthorized salary and fringe benefit survey conducted pursuant to 24–50–104(5), C.R.S. (1988 Repl.Vol. 10B) and that the Director's failure to follow the statutory procedures applicable to salary surveys violated their due process rights. We disagree.

Under the State Personnel System Act (the Act), the Director is responsible for revising and maintaining the classification system upon which the state personnel system is based. Sections 24–50–104(3) and 24–50–104(4), C.R.S. (1988 Repl.Vol. 10B). The assignment of each employee class to an appropriate salary level or grade is expressly included as an aspect of the revision of the classification system. Section 24–50–104(4)(b), C.R.S. (1988 Repl.Vol. 10B). The Department began its study in 1987 in response to a concern that the correction officer classes were being overpaid in comparison to related job classes. The stated purpose of the study was:

to assure that the class specifications accurately describe the nature of work including level of responsibility; identify and describe both examples of work and characteristic knowledge, skills and abilities; and adequately differentiate between classes; and

to assure that appropriate salary relationships are assigned to the classes.

The study was interrupted by the passage of legislation which changed the methodology by which the Department conducted salary surveys and classification studies.

When the Department resumed the study in late 1989, its primary concern continued to be to establish the "appropriate internal relationship between" the corrections classes. As part of the duty to revise and maintain the classification system, the Director is required to assign each class to an appropriate pay grade, salary rate, or salary range. Sections 24–50–104(3) and (4)(b).

We therefore conclude, contrary to plaintiffs' assertion, that the record supports the Director's finding that the study was not conducted as a salary survey pursuant to § 24–50–104(5). The fact that one of the focal points of the study was the evaluation of the appropriateness of the correctional officers' salaries did not transform the systems maintenance study into a salary survey. Accordingly, we conclude that the study was conducted pursuant to the Department's responsibility to revise and maintain the classification system under 24–50–104(3) and (4). The Department was not required to comply with the specific procedures applicable to salary and fringe benefit surveys, as set forth in § 24–50–104(5), and its failure to do so did not deprive plaintiffs of due process rights.

## II.

Plaintiffs further argue that the Director's decision to implement a 12.5% pay reduction in the correctional officers' salaries was arbitrary, capricious, and contrary to law. Plaintiffs contend that the Director's decision was flawed because the Director: (1) used outdated data in conducting the study; (2) used markets outside Colorado to establish prevailing wages for the correctional officers; and (3) relied on invalid job comparisons in comparing the correctional officer classifications to jailers. We disagree with each of plaintiffs' arguments.

■ At the outset, we note that the district court's decision is subject to judicial review under § 24–4–106, C.R.S. (1988 Repl. Vol. 10A) of the Colorado Administrative Procedure Act (APA). Section 24–50–104(4)(d)(I), C.R.S. (1988 Repl.Vol. 10B).

Under the APA, the standard of review by this court is the same as that which governed the district court's review of the administra-

tive ruling. The decision of the agency may not be reversed unless it is found to be arbitrary and capricious or contrary to rule or law. Sections 24–4–106(7) and 24–4–106(11)(e), C.R.S. (1988 Repl.Vol. 10A).

■ The Director's decision must be upheld if it is "supported by substantial evidence when the record is considered as a whole." *Anderson v. State Department of Personnel,* 756 P.2d 969, 974 (Colo.1988). For purposes of judicial review of administrative action, substantial evidence is the same as competent evidence. *Colorado Municipal League v. Mountain States Telephone & Telegraph Co.,* 759 P.2d 40 (Colo. 1988).

### A.

We find no merit in plaintiffs' contention that the Department improperly used 1989 data in conducting its study.

The Act provides that the "pay grade, salary rate, or salary range for each occupational level of classes shall be such as to consider both the relative level of difficulties and the differences in duties and responsibilities of each class and the current level of compensation of comparable employments in other places of public and private employment in appropriate competitive labor markets." Section 24–50–104(3)(e), C.R.S. (1988 Repl.Vol. 10B).

■ The Act merely requires the Department to base its decisions regarding salary levels on the "current level of compensation of comparable employments." It does not require the Department to utilize only data that is precisely contemporaneous with the issuance of the Director's decision. The Department conducted the phase of the study that is at issue here in 1989 and 1990. The 1989 data on which the study was based was sufficiently current, and the Director's reliance on that data was neither arbitrary and capricious nor contrary to law. The evidence in the record supports the Director's finding in this regard.

## B.

■ Plaintiffs further contend that the Director's decision violates the residency requirement for state employees contained in Colo. Const. art XII, § 13(6) because it was based on a study that examined salary levels in job markets outside Colorado. We disagree.

The cited constitutional provision applies to appointments, not to classification and salary determinations. Nothing in the constitution precludes the use of data regarding the compensation of out-of-state employees in determining the appropriate salary levels for state employees.

■ The Act requires the Director to make determinations regarding salary levels based on the "compensation of comparable employments in other places of public and private employment in appropriate competitive labor markets." Section 24–50–104(3)(e). Similarly, 24–50–104(2)(a), C.R.S. (1988 Repl. Vol. 10B) provides generally that the policy of the state is to pay salaries "found by the [Director] to prevail for comparable kinds of employment in *typical* places of public and private employment with which the state competes in recruiting" (emphasis added).

These provisions do not limit the "appropriate competitive labor markets" and "typical places of public and private employment" to in-state markets. Rather, the Act invests the Director with the discretion to determine which competitive job markets, whether in or out of Colorado, will provide the most useful means of establishing the appropriate salary levels for each employee classification. *See Anderson v. State Department of Personnel, supra.* The Director's decision to use data regarding salary levels in job markets outside Colorado was not arbitrary and capricious or contrary to law.

## C.

■ Plaintiffs also claim that the Director's decision was arbitrary and capricious because the Department, in conducting its study, did not obtain current job descriptions or perform job audits for correctional officers' positions. Plaintiffs contend that the Department erroneously compared the salaries of state correctional officers with those of county jailers, whose qualifications are less stringent and whose duties differ considerably from those of the correctional officers. Again, we disagree.

The Act requires the Director to establish appropriate salary rates for each occupational class by comparing the "relative level of difficulties and the differences in duties and responsibilities of each class." Section 24–50–104(3)(e).

The Director acknowledged that duties and levels of work probably differ considerably between corrections officers and jailers. However, the Department did not compare correctional officers' salaries to those of jailers for the purpose of establishing an identical salary structure for the two groups. Rather, the Department's goal was to consider the salary relationship between enforcement officers (troopers and police officers) and incarceration personnel (corrections officers and jailers). Consideration of this relationship does not require a perfect identity between the corresponding classes or an analysis of each position through detailed job descriptions or by an audit of each position. The Department compared the work performed by these classes and found it "readily apparent" that the classes perform similar work.

Competent evidence in the record supports the Director's finding that the qualifications and responsibilities required of correctional officers are sufficiently similar to those required of jailers to warrant the comparison for purposes of the Department's study. Accordingly, the Director's use of that comparison as a partial basis for her decision was not arbitrary and capricious or contrary to law.

## III.

■ Finally, plaintiffs argue that they have a vested property interest in their classifications and salary levels and that the Director's decision adjusting their classification, and therefore, reducing their salaries, violated their rights to procedural due process. We disagree.

The Fourteenth Amendment prohibits a state from depriving a person of "property" without due process of law. In alleging a deprivation of procedural due process, plaintiffs must first "demonstrate the source of the property interest which enables them to assert the constitutional claim." *Ellis v. City of Lakewood,* 789 P.2d 449, 451 (Colo. App.1989). Something more than a "subjective expectancy must be at stake to warrant the protections of procedural due process." *Anderson v. State Department of Personnel, supra,* 756 P.2d at 976.

Absent statutory entitlement, plaintiffs have no general property right to receipt of a particular salary. *See Anderson v. State Department of Personnel, supra; Hammond v. Temporary Compensation Review Board,* 473 A.2d 1267 (Me.1984). The assignment of a public employee to a particular job classification and salary grade may create a subjective expectancy in a salary, but this does not give rise to a constitutionally protected property right. *Anderson v. State Department of Personnel, supra.*

Even if we assume, however, that plaintiffs had some property interest in their salary level, we nevertheless conclude that the method by which their salary grade was adjusted satisfied the requirements of procedural due process.

Section 24–50–104(4)(d)(I) establishes a multi-level appeals process whereby employees affected by the Department's revision of the classification system, including revision of pay grades and salary levels, may challenge the Department's action.

Here, the Director provided procedural opportunities for plaintiffs to challenge the systems maintenance study in addition to the statutory administrative appeal process. She held four public hearings in lieu of the more limited oral arguments provided for in § 24–50–104(4)(d)(I). A three-member advisory panel assisted in conducting the hearings, and, at the conclusion of the hearings, the Director required the Department to conduct a review of the challenges raised on appeal. The Department's report to the Director as well as the Director's written decision, addressed each of the substantive arguments raised in the 576 appeals.

We must consider the following factors in determining how much process a property interest deserves and whether a specific procedure satisfies the requirements of due process:

[F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *see also Anderson v. State Department of Personnel, supra.*

Upon applying the *Mathews v. Eldridge* factors here, we conclude that the procedures followed by the Department and the Director satisfied the requirements of procedural due process. Any arguable property interest plaintiffs had in their salary level was protected by the statutory appeals process and the hearings afforded by the Department. Plaintiffs have identified no additional or substitute procedural safeguards the Department could or should have employed that would have been more effective in protecting their interests significantly.

"Due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The sheer number and magnitude of the administrative appeals are factors which can appropriately be considered in determining the adequacy of the procedural protections afforded. *Anderson v. Department of Personnel, supra.*

The state has a proper interest, recognized by statute, in ensuring that the compensation public employees receive is commensurate with the jobs they perform in relationship to comparable jobs in competitive public and private labor markets. The appeals process

in § 24–50–104(4)(d)(I) provides an adequate mechanism for employees to challenge the Department's decisions regarding revision of the classification system without crippling the government in its efforts to administer the state personnel system in a fiscally sound manner.

Minimal due process requires "notice of the reasons for a proposed deprivation and some opportunity to respond to the substance of the allegations before a final deprivation occurs." *Mathews v. Eldridge, supra; see also Williams v. Texas Tech Univ. Health Sciences Center,* 6 F.3d 290 (5th Cir. 1993). Here, plaintiffs received the required procedural protections.

Judgment affirmed.

STERNBERG, C.J., and BRIGGS, J., concur.