**DEPARTMENT OF CORRECTIONS EMPLOYEES COALITION, an unincorporated association, and Joseph Barrett, Plaintiffs–Appellants,**

**v.**

**Roy ROMER, in his official capacity as the Governor of Colorado, Shirley Harris, in her official capacity as the acting Executive Director of the Colorado Department of Personnel, the Colorado Department of Personnel, and the State of Colorado, Defendants–Appellees.**

No. 93CA0096.

Colorado Court of Appeals, Div. II.

July 28, 1994.

Jon L. Holm, Robert B. Johns, Denver, for plaintiffs–appellants.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Michael P. Serruto, Sr. Asst. Atty. Gen., Denver, for defendants–appellees.

Opinion by Judge MARQUEZ.

In this action for declaratory judgment, plaintiffs, the Department of Corrections Employees Coalition and Joseph Barrett, appeal the summary judgment entered in favor of defendants, Roy Romer, as Governor of Colorado, and Shirley Harris, as acting executive director (director) of the Colorado Department of Personnel (the department). The plaintiff's complaint alleged, *inter alia,* that Senate Bill 240, Colo.Sess. Laws 1987, ch. 190 at 1032–35 (codified as § 24–50–104(5)(a), C.R.S. (1988 Repl.Vol. 10B)), violates the separation of powers requirements of Colo. Const. art. III and that Senate Bill 91–180, Colo.Sess. Laws 1991, ch. 150 at 842–44 (codified as § 24–50–104(4)(d)(III), C.R.S. (1993 Cum.Supp.)), violates the equal protection clause of the Fourteenth Amendment. We affirm.

The present litigation began as a result of a "System Maintenance Study" (study) conducted by the department. The study, which was implemented in 1991, concluded that employees in the correctional classes were being paid more than the salary rate prevailing in local, regional, and national markets. The study recommended that the correctional classes employees' salaries should be reduced by 12½%.

Numerous corrections officers challenged the study by appeal to the director. The director concluded that the data compiled in the study supported the salary grade reduction, and this decision was eventually affirmed by a separate division of this court. *See Blake v. Department of Personnel,* 876 P.2d 90 (Colo.App.1994).

Plaintiffs now challenge the constitutionality of two statutes that are related to how the department determines salaries of state employees and how those determinations are implemented. Senate Bill 240, enacted in 1987, delineated what type of salary surveys the director was to use in determining a prevailing wage. The specific provision that plaintiffs now allege is unconstitutional was deleted from the statute effective July 1, 1992. *See* Colo.Sess. Laws 1992, ch. 161 at 1078. Senate Bill 91–180 was specifically written to implement the study at issue here. This bill was signed into law on April 17, 1991.

## I.

■ Summary judgment is a drastic remedy and is never warranted except on a clear showing that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988).

## A.

Plaintiffs contend that Senate Bill 240 violates the constitutional doctrine of separation of powers. Specifically, they complain that, because Senate Bill 240 requires the director to use wage surveys conducted by *nonstate* public or private agencies, as opposed to its own wage surveys, the director cannot carry out her duties as required by the constitution. We disagree.

Significant to this issue are two separate duties of the director. First, the director is required to revise and maintain the classification system. Section 24–50–104(4), C.R.S. (1988 Repl.Vol. 10B) (titled "Revision and maintenance of the classification system."). Second, the director is to utilize salary and fringe benefit surveys on an annual basis to determine comparable rates for salaries and fringe benefits prevailing in other places of public and private employment. Section 24–50–104(5), C.R.S. (1988 Repl.Vol. 10B) (titled "Salary and fringe benefit surveys."). As part of this latter section, Senate Bill 240 provides in pertinent part:

To determine comparable rates for salaries and fringe benefits prevailing in other places of public and private employment, the state personnel director shall annually ~~conduct~~ UTILIZE THE RESULTS OF APPROPRIATE salary and fringe benefit surveys CONDUCTED BY NONSTATE PUBLIC OR PRIVATE AGENCIES. In ~~conducting~~ UTILIZING the surveys, the state personnel director shall select various survey classes to be used in establishing prevailing rates for all classes and employees in the state personnel system. *See* Colo.Sess. Laws 1987, ch. 190 at 1033 (overstriking and capitalization reflect deletions and additions to the prior statute).

In their motion for summary judgment, plaintiffs limited their argument to whether the bill violates the constitution. Conversely, defendants, in their motion for summary judgment and on appeal, contend that the study here was conducted pursuant to §§ 24–50–104(3) and (4), C.R.S. (1988 Repl.Vol. 10B), neither of which contains a "nonstate" restriction. Thus, defendants assert that the "nonstate" restriction for "salary and fringe benefit surveys" is irrelevant in this case.

Attached to defendants' motion for summary judgment is material related to the study, a copy of the study, and the director's decision. Moreover, it is undisputed that this issue was addressed in the previous appeal to this court from the director's decision. *See Blake v. Department of Personnel, supra.*

In that appeal, the corrections officers argued "that the Department's systems maintenance study was an unauthorized salary and fringe benefit survey conducted pursuant to § 24–5–104(5), C.R.S. (1988 Repl.Vol. 10B) and that the Director's failure to follow the statutory procedures applicable to salary surveys violated their due process rights." In response, the *Blake* court stated:

We therefore conclude, contrary to plaintiffs' assertion, that the record supports the Director's finding that the study was not conducted as a salary survey pursuant to § 24–50–104(5). The fact that one of the focal points of the study was the evaluation of the appropriateness of the correctional officers' salaries did not trans-

form the system maintenance study into a salary survey. Accordingly, we conclude that the study was conducted pursuant to the Department's responsibility to revise and maintain the classification system under 24–50–104(3) and (4). The Department was not required to comply with the specific procedures applicable to salary and fringe benefit survey, as set forth in § 24–50–104(5), and its failure to do so did not deprive plaintiffs of due process rights.

However, from the record before us, we cannot determine if plaintiffs in this case are either identical to or in privity with the plaintiffs in *Blake*. *See Pomeroy v. Waitkus*, 183 Colo. 344, 517 P.2d 396 (1973). Thus, because we cannot determine whether plaintiffs are estopped from raising this argument, we choose to proceed to the merits of their constitutional claim.

Colo. Const. art. III provides for separation of governmental powers as follows:

The powers of the government of this state are divided into three distinct departments,—the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted.

■ The delineation of the line dividing these powers is often difficult and must be accomplished on a case-by-case basis. *Anderson v. Lamm*, 195 Colo. 437, 579 P.2d 620 (1978).

■ In regard to the director, Colo. Const. art. XII, § 14(4) provides:

There is hereby created the department of personnel, which shall be one of the principal departments of the executive department, the head of which shall be the state personnel director, who shall be appointed under qualifications established by law. The state personnel director shall be responsible for administration of the personnel system of the state under this constitution and laws enacted pursuant thereto and the rules adopted thereunder by the state personnel board.

In discussing this provision, our supreme court has noted:

The Colorado Constitution, therefore, contemplates the elaboration of the Civil Service Amendment through laws enacted by the legislature and rules adopted by the Board. The Director, who heads the department of personnel, a department within the executive branch, administers the system, guided and constrained by constitutional, statutory and regulatory provisions.

*Colorado Ass'n of Public Employees v. Department of Highways*, 809 P.2d 988, 993 (Colo.1991).

The laws to be enacted by the General Assembly are not limited in any relevant section of the constitution, nor are there specified duties of the director. We do not see, and plaintiffs do not explain, exactly how any provision of Senate Bill 240 infringes on or "unconstitutionally intrude[s] on the *executive* power of the State Department of Personnel as established by the Colorado Constitution."

For example, the director is required to transmit an annual report to the Governor and to the General Assembly accounting for the director's discharge of the responsibilities "assigned by law or directive to the [department]." Section 24–50–102, C.R.S. (1988 Repl.Vol. 10B). This provision "reflects the fact that the director's authority is defined and thus limited by several statutes." *Dempsey v. Romer*, 825 P.2d 44, 55 (Colo. 1992).

■ It is the duty of counsel to inform the court both as to specific errors relied upon and as to the grounds, supporting facts, and authorities therefor. *Westrac, Inc. v. Walker Field*, 812 P.2d 714 (Colo.App.1991).

Under these circumstances, we find no reason to infer that the exercise of the legislative power in Senate Bill 240 intrudes on the executive branch.

### B.

■ In regard to their contention that Senate Bill 91–180 violates the equal protection clause of the Fourteenth Amendment,

plaintiffs specifically argue that "the legislature singles out employees in the correctional classes and requests that their wage survey be implemented in advance of the time that is accorded any other [group]." We perceive no denial of equal protection.

Senate Bill 91–180 provides in pertinent part:

> Any reassignments of classes to pay grades, salary rates, salary ranges, or pay relationships required by the systems maintenance study published by the department of personnel in January, 1991, concerning correctional classes in the enforcement/protective services occupational group, including the forensic security officer class, shall be implemented on the effective date of this subparagraph (III), or on the first day following administrative resolution of any appeals concerning such study, whichever date is later ... Notwithstanding the provisions of section 24–50–107, the compensation rate of employees in the correctional classes and the forensic security officer class who have commenced work on or before the effective date of this subparagraph (III) shall be sustained at rates in effect immediately prior to the implementation of the study described in this subparagraph (III).

In the absence of an infringement of a fundamental right or the creation of a suspect class, neither of which is involved here, legislative classifications do not contravene equal protection standards if the statutory scheme has a reasonable basis in fact and bears a rational relationship to a legitimate governmental interest. *Dempsey v. Romer, supra.*

The party challenging the statutory classification bears the burden of proving beyond a reasonable doubt that the statutory classification is indeed unreasonable or, if reasonable, is unrelated to any legitimate governmental objective. *Persichini v. Brad Ragan, Inc.*, 735 P.2d 168 (Colo.1987).

Colo. Const. art. XII, §§ 13, 14, & 15 (Civil Service Amendment) established the state personnel system, which is further developed statutorily by §§ 24–50–101 to 24–50–142, C.R.S. (1988 Repl.Vol. 10B). *See Colorado Ass'n of Public Employees v. Department of Highways, supra; see also Dempsey v. Romer, supra* (presenting a detailed history of legislation associated with hiring, retaining, and compensating state employees).

As set forth in *Dempsey v. Romer, supra,* 825 P.2d at 49, 56:

> The statutory scheme applicable here requires the director to establish classifications of different positions within the state personnel system. § 24–50–104(3)(a), 10B C.R.S. (1988). A position consists of particularly defined duties and responsibilities. A class consists of one or more positions sufficiently similar in duties, responsibilities, complexity of tasks and required skill, knowledge and ability to justify the establishment of identical requirements of education and experience and the administration of identical competitive tests. Each class and each position within a class is accorded a different grade of pay as established by the director pursuant to a pay plan for state employees. § 24–50–104(6), 10B C.R.S. (1988).
>
> . . . .
>
> [S]ubsections 24–50–104(4) and (5) establish a comprehensive scheme authorizing the director to develop pay plans establishing classes, positions and grades of pay based upon salary and benefit surveys; to revise such pay plans under specific criteria; and to submit the results of the exercise of such authority in the form of recommendations to the Governor and, ultimately, the General Assembly.

In discussing the statutory scheme, the supreme court has concluded that the General Assembly retained the authority to " 'fix the salary of each class and grade as established by the Commission, and the performance of its obligations so to fix salaries is necessary for the proper establishment of civil service in Colorado in accordance with that amendment.' " *Dempsey v. Romer, supra,* 825 P.2d at 53 (*quoting Vivian v. Bloom,* 115 Colo. 579, 177 P.2d 541 (1947)).

Again quoting *Vivian v. Bloom, supra,* the *Dempsey* court also noted that the General Assembly was limited in that it had " 'no authority to discriminate in regard to salaries

between members of any class and grade as established by the Commission.'" *Dempsey v. Romer, supra,* 825 P.2d at 52. As noted later in *Dempsey:* "Neither the prior nor the current constitutional amendments contain express limitations on the authority of the General Assembly to appropriate funds for the purpose of compensating state employees other than the prohibition recognized by this court in *Vivian.*" *Dempsey v. Romer, supra,* 825 P.2d at 53.

In *Dempsey,* the issue involved the establishment of maximum monthly salary levels by the General Assembly. There, the court concluded:

> By maintaining a salary cap in pay plans, the General Assembly fosters public confidence in the fiscal integrity of the entire personnel system.
>
> Furthermore, it is well settled that our constitution grants the General Assembly primary responsibility for determining the amount of revenue to be expended in carrying out the public policies of the state ... The responsible exercise of this power of the purse requires the legislative branch to assume ultimate accountability for the appropriation process....

*Dempsey v. Romer, supra,* 825 P.2d at 56.

In concluding that this limitation did not violate equal protection, the court stated:

> In view of its decision in 1973 to authorize the director to develop merit-based pay plans that include salary rates and ranges, retention by the General Assembly of ultimate fiscal control over the personnel budget of the state by establishing some limitations on the contents of pay plans recommended by the director represents a reasonable exercise of legislative responsibility for maintaining the fiscal integrity of the state personnel system.... The determination to establish the maximum monthly salary that may be earned by state employees bears a reasonable relationship to that governmental interest.

*Dempsey v. Romer, supra,* 825 P.2d at 57.

Here, the "Systems Maintenance Study" was to be implemented in accordance with the above-quoted Senate Bill 91–180.

Following the reasoning in *Dempsey v. Romer, supra,* we conclude that Senate Bill 91–180 bears a rational relationship to the government's interest of maintaining the fiscal integrity of the state personnel system. Furthermore, plaintiffs do not claim that the statutory classification discriminates between members of a given class or grade. *See Dempsey v. Romer, supra.*

Thus, we conclude that the statute does not deprive plaintiffs of equal protection of the law.

The judgment is affirmed.

CRISWELL and TAUBMAN, JJ., concur.