QUESTION PRESENTED AND CONCLUSION Question: Are Clinical Security Officers employed at CMHIP properly classified? If not, must they be either reclassified as Health Care Technicians or certified as Peace Officers in order to retain their classification?
Answer: The General Assembly has given the State Personnel Director ("Director") the authority to establish classifications for state employees and to oversee the classification system for all state agencies. The Director determined that the Clinical Security Officers were not properly classified. Making classification determinations is the Director's responsibility, and his determination was reasonable and, therefore, must be accorded deference.
 DISCUSSION
The request for this Attorney General Opinion arose because the Director advised DHS that the CMHIP Clinical Security Officers need to either become Peace *Page 2 
Officers or the positions should be reclassified to Health Care Technician. A review of the relevant documentation and law leads to this opinion that it was reasonable for the Director to conclude that Clinical Security Officers are improperly classified and that the Director's decision is entitled to deference.
A. The Director is charged with classifying positions in the StatePersonnel System and his decisions are entitled to deference.
The Director is responsible for the administration of the state personnel system and laws enacted pursuant to the State Constitution. Colo. Const. art. XII, § 14(4). The Director must provide oversight for managing the personnel system, including "consultant services to executive branch agencies . . . to further their professional management of human resources in state government. § 24-50-101(3)(c), C.R.S. Pursuant to § 24-50-104 (1) (b), C.R.S., the Director is tasked with classifying all state personnel system positions. See also Blake v.Department of Personnel, 876 P.2d 90, 96 (Colo.App. 1994) (it is the Director's responsibility to establish occupational classes by comparing the "relative level of difficulties and the differences in duties and responsibilities of each class.")
An administrative agency acting within the scope of its authority is presumed to make valid and constitutional decisions. Moore v. DistrictCourt, 184 Colo. 63, 67, 518 P.2d 948, 951 (Colo. 1974); Denver v. Boardof Assessment Appeals, 802 P.2d 1109, 1111 (Colo.App. 1990). Deference should be given to the interpretations of statute by the officer or agency charged with its administration. Weld County Sch. Dist. RE-12 v.Bymer, 955 P.2d 550, 557 (Colo. 1998) see also Abromeit v. Denver CareerService Bd., 140 P.3d 44, 49 (Colo.App. 2005) (interpretation of personnel rules by the agency charged with enforcement of those rules is generally entitled to great deference). An agency's interpretation is to be accepted if it has a reasonable basis in law and is warranted by the record. Abromeit, id.
An agency's interpretation of its statutes need only be reasonable in order to merit great deference. Alexander v. Richardson, 451 F.2d 1185,1187 (10th Cir. 1972); Colorado Association of Public Employees v.Lamm, 677 P.2d 1350, 1357 (Colo. 1984). Deference is especially appropriate if the agency's expertise or technical knowledge is involved. Roberts Construction Co. v. Small BusinessAdministration, 657 F. Supp. 418 (D. Colo. 1987). The Director is required to have administrative expertise, has broad responsibilities, and her decisions are presumed valid. Bernstein v. Livingston,633 P.2d 519, 521-22 (Colo.App. 1981).
B. CMHIP Clinical Security Officers do not have statutory peaceofficer status as required by the Director's guidance on positionclassifications. Their duties include a blend of security and *Page 3 psychiatric technician. Therefore the Director's opinion that thesepositions should be reclassified is reasonable.
The Director's designee, David Kaye, informed the DHS Human Resources Director that CMHIP's Clinical Security Officers are incorrectly classified because positions in the Enforcement and Protective Services Occupational Group must have statutory peace officer status.See Letter from Kaye to Mallon dated December 17, 2007, pg. 1. Mr. Kaye also stated that after reviewing the duties of these positions, he determined that they combine both security and psychiatric technician duties. As a result, they should be reclassified in a different Occupational Group such as Health Care Technician. Id.
 1. Background on Class Series Descriptions Position DescriptionQuestionnaires.
Positions in the state personnel system with similar duties are grouped together into a "class" (e.g. correctional security officers, youth security officers, and clinical security officers). Groups of similar classes are then further placed under the larger umbrella of "Occupational Group" (e.g. Enforcement and Protective Services). A description of the work within each Occupational Group and the specific factors for the group are set forth in a "Class Series Description." The Class Series Description identifies the concept of and job factors for each class in the Occupational Group. To assist in defining terms and determining proper classifications, the Director relies on a "Job Evaluation Glossary" ("Glossary").[1]
All State agencies maintain a Position Description Questionnaire ("PDQ") for each position within their department. The PDQ identifies the position title (i.e. Clinical Security Officer II) and provides information on the purpose of the position and a description of the job duties. The job description section of the PDQ sets forth the percentage of the time each specific job duty is performed. The job duties of the position must fall within the duties for that classification contained in the Class Series Description and comport with the definitions in the Glossary.
2. CMHIP Clinical Security Officers do not have peace officer status,contrary to the requirement in the Glossary. *Page 4 
The Clinical Security Officer class is contained within the Enforcement and Protective Services Occupational Group. This group also includes the classes of Correctional Security Officer and Youth Security Officer. The Glossary defines the Enforcement and Protective Services Occupational Group as follows: "[t]hese occupations perform services where peace officer status is granted by statute with the authority and duty to enforce criminal laws. . .[p]ositions in this group must satisfy requirements set forth in statute to carry out their commission and duties, and `shall or may' require certification by the Peace Officers Standards and Training (P.O.S.T.) Board as specified by statute." Glossary, p. 2. It also states that "occupations that have peace officer status, but do not have a statutory P.O.S.T. Board certification requirement, are not included in this occupational group." Id.
Pursuant to § 24-7-101, C.R.S., state institutions and departments may employ "security" officers. Section 24-7-106 states that persons employed by the state as security officers shall not be designated as peace officers without completing P.O.S.T. Board certification and without legislative authorization under § 16-2.5-101, C.R.S. Section 16-2.5-101(1) states that only persons designated under that article are peace officers, whether they are certified by the P.O.S.T. Board or not. Clinical Security Officers are not designated by article 2.5 as peace officers.[2]
It was reasonable for the Director to determine that Clinical Security Officers do not fit within the Enforcement and Protective Services Occupational Group because Clinical Security Officers are not granted peace officer status by statute. Therefore, the Director's finding that peace officer status was required for all positions within the Enforcement and Protective Services Occupational Group has a reasonable basis in law, and should be given deference.
3. The Director reasonably concluded that the Class SeriesDescriptions Position Description Questionnaires show that ClinicalSecurity Officers are misclassified.
The Class Series Description states that work in this group "entails custody and security responsibilities over offenders, youth offenders/residents, or psychiatric clinical care clients as to their housing, treatment, rehabilitation, education, health care, recreation, transportation, and/or employment. . . ." See Class Series Description for Correctional, Youth, or Clinical Security Officer, Description of Occupation Work, p. 1. It also states that the "[w]ork involves oversight, supervision, crisis intervention, or evaluation to assure the physical safety and security of property and others." Id. *Page 5 
The "Concept of the Class" section of the Class Series Description, states that "[p]ositions in mental health institutions or youth/juvenile areas may participate in work of a clinical treatment or counseling nature, but the assignment is primarily security and control and doesnot include professional treatment, counseling, therapy, or socialwork." See Class Series Description for Correctional, Youth or Clinical Security Office, p. 3. (Emphasis added). The Colorado Supreme Court has defined "primarily" as "in the first place." High Gear and Toke Shop v.Beacom, 689 P.2d 624, 632 (Colo. 1984). See also Webster's New Twentieth Century Dictionary, 1428 (2nd ed. 1979) ("primarily" defined as "at first; in the first instance.")
CMHIP's PDQ for Clinical Security Officers provides information on the position and describes the job duties, including the percentage of time spent on each specific duty. In section II.C. of the PDQ, under the "General Information" title, the purpose of the position is described as follows:
 Provide for the establishment and maintenance of safe, secure and therapeutic environment on high-security Forensic units. Provide required in-service and training related to patient control and containment and provide feedback to team. Develop and ensure security policies and practices including physical searches, patient monitoring, physical plant integrity and management of dangerous patient(s). Provide quality patient care through the assessment of patient and family needs, and Milieu management, crisis intervention, patient teaching, and administration of medication) [sic], and evaluation of the effectiveness of treatment. Provide accurate documentation of the patients' progress (or lack of progress) toward established goals. Establish and utilize effective communication with co-workers and patients. Participate in unit maintenance including: accurately transcribing orders; filing of medical records; completion of census/accountability sheet; conducting ward checks and contraband checks; and, supervising patients during activities.
See Clinical Safety Security Officer II PDQ, position #3658, p. 1.
In section III. of the PDQ under the "Job Description" section, current functional attributes of job duties are listed, along with the percentage of time devoted to each of the various duties: *Page 6 
% Duty Statement
25% Clinical Skills: Assist/ teach patients with illness by demonstrating a
 working knowledge of mental/physical illness and implementing
 appropriate therapeutic approaches. Utilizes interviewing/counseling
 techniques under supervision of an RN, psychiatrist, psychologist, and social
 worker, according to the individual patient's POC. Act as patient advocate.
 Participates as a team member in plan and care formulations and reviews,
 reporting and contributing pertinent information. Monitors patient on
 special precautions. Adheres to infection control procedures.
25% Safety and Security: Provide safe/secure environment through policy
 development, controlling critical situations, milieu management,
 (including counseling, medication), inspection of alarm systems,
 communication devices, perimeter checks, physical plant integrity,
 contraband searches (patient, property facility). Ensure Fire and CTI
 drills are conducted per policy. Chair / or participate on committees to
 identify address safety/security issues. Responds to changing patient
 conditions / behaviors by modifying interventions /security considerations.
 Provides direction to coworkers / team regarding safety security issues.
 [Emphasis added.]
10% Direct Nursing Care: Provide a healthy and therapeutic environment
 by assisting and teaching skills specific to patient's needs/diagnosis.
 Administer medication and medical treatments in accordance with
 physician order, patient POC and Psychiatric Technician Act. Accurately
 transcribes physician orders. Reports and contributes pertinent
 information, conferring with all other disciplines to enhance
 planning/provision of nursing care.
10% Control and use of force: Provide safe secure movement of high-
 security patients off living area, transport patients to yard, gymnasium,
 visits, conference room, court community reintegration sights, providing
 security specific to IFP CMHIP policy. Determine appropriate level of
 external control assume the lead in intervening to control assaultive 
 aggressive patient behavior on assigned other units (from verbal de-
 escalation to physical restraint) in accordance to policy procedure.
 Monitor patient behavior through scheduled checks to prevent dangerous
 situations.
 *Page 7 
10% Monthly Inservice and Development of Staff: Serve as trainer and
 resource for safe and effective management of patient safety and security
 (including Verbal Judo and Continuum of Therapeutic Interventions).
 Upgrade knowledge of all aspects of mental illness, medications,
 behavioral aspects, new techniques by attending Division 
 Agency training. Provide recommendations and ensure adherence to
 polices /procedures related to security issues. [Emphasis added.]
5% Documentation: Provide accurate account of patients' progress in
 treatment, physical condition, behaviors observed per CMHIP
 documentation policy/procedure to include 1.1's groups, medical and
 crisis intervention, milieu management, response to medication, and
 correspondence from community agencies. Provide testimony when
 necessary. Participate in unit level PM/PI program including auditing.
 Coordinates and completes documentation of critical incidents, fire drills,
 code zero drills, room searches, building searches, and memorandums to
 supervisors re: security. Participates in Code O Drills.
 5% Safety and Security Protocols: Maintain tracking logs of CTI drills
 and safety/security checks and inspections, documentation of searches
 and contraband checks. Serves as instructor for coworkers on effective
 management of dangerous, potentially violent individuals. Ensures
 members of team and competent to manage safety and security situations.
5% Hygiene and Unit Maintenance: Provide a healthy and therapeutic
 environment by assisting and/or teaching self-maintenance and daily
 hygiene skills and supervision/direct aid of proper hygiene techniques.
 Maintain unit cleanliness and a working knowledge of cleaning solution
 used, performing general office duties required and securing supplies
 needed to give patient quality care.
5% Communication: Communicates with team members, patients, ancillary
 department (including Public Safety) to enhance safety and ensure a
 seamless continuum of provision of patient care, agency and community
 safety. Participates in team meetings, committees and cross-shift reports to
 ensure that information specific to the unit, patient and staff safety is
 addressed.

Clinical Safety Security Officer II PDQ, position #3658, pp. 3-4.
The "general information" section of the PDQ states that, in addition to safety and security functions, this position provides a "therapeutic" environment, provides "quality patient care through the assessment of patient and family needs. . patient teaching, and administration of medication. . .," documents patient progress *Page 8 
towards goals, and files medical records. This articulates the dual nature of the position and how it is not defined as primarily security or primarily therapeutic.
The job description section of the PDQ shows that safety and security duties account for approximately 50% of the job (Safety Security — 25%; Control and Use of Force — 10%; Monthly Inservice and Development of Staff — (both) 10%; Documentation (both); Communication (both); Safety and Security Protocols — 5%). Additionally, some duties listed as security do not even involve security functions. For instance, under the 25% Safety and Security section it lists "counseling, medication." Finally, under the 10% Monthly Inservice and Development of Staff it states "upgrade knowledge of all aspects of mental illness, medications, behavioral aspects, new techniques by attending Division Agency training." These are not security functions and are more akin to clinical duties.
The determination by the Director that the duties of the Clinical Security Officer are a combination of security and psychiatric technician duties and should be reclassified is supported by an analysis of the Class Series Description and PDQ. Therefore, the determination is entitled to deference. See Weld County Sch. Dist. RE-12 v. Bymer,955 P.2d at 557.
 CONCLUSION
The Director has the legal authority to set classifications for state employees, including those at issue here, and to oversee the implementation of the classification system. The Director's opinion that Clinical Security Officers must be reclassified has a reasonable basis in law and is supported by the record. Since the Clinical Security Officers lack peace officer status, they are not eligible to be placed in the Enforcement And Protective Services Occupational Group. The Director's determination that the mixed duties outlined in the PDQ show that this position should be reclassified as Health Care Technician is not unreasonable. As a result, DHS must defer to the Director's opinion that Clinical Security Officers are improperly classified and must be reclassified to another Occupational Group.
Issued this 6th day of April, 2009.
_________________________ JOHN W. SUTHERS, Colorado Attorney General
[1] Class Series Descriptions for all classes in the State Personnel System are located on the Division of Human Resources web page at:
http://www.colorado.gov/dpa/dhr/select/index.htm. The Glossary is located at: http://www.colorado.gov/dpa/dhr/comp/jobeval.htm.
[2] Correctional Security Officers working at CMHIP are peace officers listed under this article at § 16-2.5-140, and may be P.O.S.T. certified.